# Philadelphia *versus* Fox *et al.*

1. A municipal corporation is a public corporation created by the govern-ment for political purposes, having subordinate and local powers of legisla-tion.

2. A municipal corporation is merely an agency instituted by the sover-eign, to carry out in detail the objects of government; revocable and having no vested right to any of its powers or franchises.

3. The charter of a municipal corporation is not a contract with the state and is subject to the control of the legislature, who may enlarge or diminish its territorial extent or functions.

4. The legislature may modify the internal arrangement of a municipal corporation or destroy it.

5. While a municipal corporation thus exists, it enjoys the rights and is subject to the liabilities of any other corporation, public or private.

6. The legislature cannot authorize a municipal corporation to violate a contract.

7. The sovereign may continue the existence of a municipal corporation, and assume the appointment of all its officers.

8. The legislature cannot by contract, invest any municipal corporation with an irrevocable franchise of government over any part of its territory.

| 64 | 169 |
| 150 | 450 |

| 64 | 169 |
| 175 | 344 |

| 64 | 169 |
| 179 | 114 |

| 64 | 169 |
| 195 | 573 |

| 64 | 169 |
| f199 | 541 |
| 199 | 547 |

| 64 | 169 |
| 19 SC | ²554 |

| 64 | 169 |
| 206 | ⁴573 |

| 64 | 169 |
| 217 | ²238 |
| 32 SC | ²227 |

| 64 | 169 |
| f37SC | ⁴530 |

[Philadelphia *v.* Fox ]

9. A municipal corporation may be a trustee under grant or will, for public purposes germane to its objects.

10. The trusts under Girard's will and the other trusts confided to Philadelphia, are germane to its objects as a municipal corporation.

11. The trusts are charities; charities are *public* trusts.

12. A trust for a particular person is not a charity.

13. Indefiniteness is of the essence of a charity.

14. A municipal corporation by accepting such trusts cannot thereby invest itself with any immunity from legislative action.

15. A municipal organization, trustee of a charity, cannot set up a vested right to maintain such organization in the form in which it was when the trust was created, and prevent the state from changing it as the public interests may require.

16. That a judge is a trustee of a charity is no disqualification in him to sit.

17. The Act of June 30th 1869, authorizing the judges of the Supreme Court, and other judges to appoint trustees for the trusts to the city of Philadelphia, under Girard's will and others is constitutional.

January 31st 1870.    Before Thompson, C. J., Read, Agnew, Sharswood and Williams, JJ.

Appeal from the decree of the Supreme Court at Nisi Prius.

This was a bill in equity, No. 6, to January Term, filed in the Supreme Court for the Eastern District, by the City of Philadelphia against Daniel M. Fox, Mayor of the city of Philadelphia, William S. Stokley, President of the Select Council, Louis Wagner, President of the Common Council of the said city, Edward King, Henry M. Phillips, William B. Mann, Alexander Biddle, William Welsh, Charles H. T. Collis, James Campbell, James L. Claghorn, J. Gillingham Fell, Gustavus S. Benson, J. H. Michener, George H. Stuart.

The proceedings were instituted to test the validity of the appointment of a board, called "Directors of City Trusts," made under authority of an Act of Assembly of the 13th of June 1869.

The act provided :—

Sect. 1. That after 1st of July then next, all the duties, rights and powers of the city of Philadelphia, concerning all property and estate whatsoever, dedicated to charitable uses or trusts, the charge or administration of which are now or shall hereafter become vested in or confided to the city of Philadelphia, shall be discharged by the said city through the instrumentality of a board composed of fifteen persons, including the mayor of said city, the presidents of the select and common councils for the time being, and twelve other citizens, appointed as hereinafter provided, to be called directors of city trusts, who shall exercise and discharge all the duties and powers of said city, however acquired, concerning any such property appropriated to charitable uses, as well as the control and management of the persons of any orphans or others, the objects of such charity, to the extent that the same have been or hereafter may be, by statute law or otherwise, vested in or delegated to the said city or the officers thereof.

[Philadelphia *v.* Fox.]

Sect. 2. The judges of the Supreme Court, together with the judges of the District Court and the Court of Common Pleas of the city and county of Philadelphia, shall form a board of appointment, of which the Chief Justice of the Supreme Court shall ex officio be president, which shall convene in the city of Philadelphia, at such time and place as the said Chief Justice shall appoint, within eight weeks from the passage of this act, and select and appoint, from the citizens of said city, twelve persons to serve, during good behavior, as members of the before-mentioned board of directors of city trusts, subject, however, to removal as hereinafter provided, &c. * * *

Sect. 4. The said directors of trusts shall have power to make rules and by-laws for the proper regulation of their business, to appoint as many agents as in their judgment shall be required for the proper discharge of all the duties delegated to said directors, &c.; * * * also in the name of the said city, and in accordance with the conditions of said charitable trusts, to make all leases, contracts and agreements whatsoever, which, in the course of the administration and management of said property, it may from time to time become necessary and proper to make and execute; and it shall be the duty of the said directors of trusts, for and in the name of the said city, to do, perform and discharge all and singular whatever acts and duties are or from time to time may become proper or necessary to be done by the said city in discharge of said trust, and to make an annual report thereof to the councils of the city, to the board of appointment and to the legislature of the state of Pennsylvania. * *

Sect. 6. The said directors, in the discharge of their duties, and within the scope of their powers aforesaid, shall be considered agents or officers of said city; but no compensation or emolument whatever shall be received for such services, nor shall any of them have or acquire any personal interest in any lease or contract whatever, made by said city, through said directors or through any agent appointed by them.

The following trusts were held by the city of Philadelphia:—

I. By the will of Stephen Girard, 1. The sum of $10,000 in trust, with the income thereof, to purchase fuel and distribute the same annually "amongst poor white housekeepers and roomkeepers, of good character, residing in the city of Philadelphia."

2. The residue of his estate in trust:—

As to $2,000,000 thereof to erect a college building, and to endow the same as a place for the habitation and education of orphan children.

As to $500,000 to apply the income annually to lay out, pave, and light a street, to front the river Delaware, to be called Delaware Avenue; to pull down and remove all wooden buildings and others formed of combustible materials within the said city, and

[*Philadelphia v.* Fox.]

to prohibit the future building of such therein; to regulate, widen, pave and curb Water street within the said city; and to the further improvement of the eastern part of the said city.

And the remainder of the said residue to apply the annual income to the further improvement of the said college, to the establishment of a proper police for the said city, to enable "the said corporation to improve the city property and the general appearance of the city" and, "in effect, to diminish the burden of taxation."

3. The testator devised and bequeathed to the said corporation the whole of the residue of his estate in trust for the purpose mentioned, except $300,000, which he gave to the Commonwealth of Pennsylvania, to be paid when laws should be enacted to enable the said city to lay out Delaware Avenue, to remove wooden buildings, and to widen Water street.

The testator prescribed in his said will many regulations for the government of his said trustees in the management of the said trust estate, and said: "I leave, necessarily, many details to the mayor, aldermen, and citizens of Philadelphia and their successors; and I do so with the more confidence, as from the nature of my bequests, and the benefit to result from them, I trust that my fellow-citizens of Philadelphia will observe and evince especial care and anxiety in selecting members for their city councils and other agents."

The testator further provided, that if the city should knowingly and wilfully violate any one of the conditions mentioned in his said will, then the said remainder and accumulation should go to the Commonwealth of Pennsylvania, except the rents and profits of his real estate in the city and county of Philadelphia, which he declared should for ever be applied to the maintenance of the said college, &c.

II. By the will of Dr. Benjamin Franklin, 1000*l.* sterling in trust, to "let out the same upon interest at five per cent. per annum to such young married artificers under the age of twenty-five years as have served an apprenticeship in the said" city, to assist them in setting up their business; such loans not to exceed 60*l.*, or be less than 15*l.* to any one person. The testator directed that at the expiration of one hundred years from his death, part of the accumulated capital of his bequest should be applied to introducing water from the Wissahickon creek into the said city.

III. The Trustees of First Lodge of Free Masons, in the year 1793, paid "the corporation of the city of Philadelphia" the sum of $1533.57, to be by them applied "towards establishing a fund for supplying, out of the interest thereof, the necessitous inhabitants with fuel in the winter season." And in the same year Mr. Ricketts presented $631 to the same corporation for the like purpose. Subsequently the fees and fines of the Mayor's Court for

the years 1796 to 1800, amounting to $307, was devoted to the same purpose.

IV. By the will of John Bleakley; 1. "To the corporation of the city of Philadelphia, as a fund to procure fuel during the winter season for poor housekeepers, widows, 1000*l*."

2. "To the corporation of the city of Philadelphia, as a fund to relieve those who may be reduced to the necessity of being placed in the hospital during the existence of the yellow fever, 1000*l*." An act of April 16th 1836, authorized the city corporation to appropriate and pay the annual income of this bequest to the managers of the Wills Hospital for the indigent blind and lame: but provided, that if at any time the fund or income should be required for the purposes specified in the said will, then it should be so appropriated.

V. By the will of Elizabeth Kirkpatrick; the balance after sale of her real estate to be "paid and delivered by my executors unto the corporation of the city of Philadelphia for the use of the poor of the said city, without any distinction of person or color." The amount paid to the city by the executors of Mrs. Kirkpatrick, was $2278.59, which was added to the fund appropriated to purchase fuel for the poor.

VI. By the will of John Scott, $3000, "to be applied to the same purpose as the legacy" of Dr. Franklin, before mentioned: and $4000 "with the proviso that the interest and dividends to become receivable upon" it "be laid out in premiums to be distributed among ingenious men and women who make useful inventions."

VII. By will of Elias Boudinot; certain timber lands in Centre county, in trust, to apply the rents and income "to and for the beginning of a fund, or in aid of one already begun, for the supplying the poor inhabitants of the city and liberties of Philadelphia with the householders (not able to provide it for themselves) at a price during the winter season not in any case exceeding the moderate average price of wood during the preceding summer, with fuel of such kind and sort as to the said mayor and corporation may seem more likely to answer the purpose aforesaid."

VIII. By the will of James Wills; "All the residue of my estate, * * * in trust for the purchase of a sufficient plot of ground in the city of Philadelphia or in the neighborhood thereof, and thereon to erect or cause to be erected suitable buildings and accommodations for an hospital or asylum to be denominated 'The Wills Hospital for the relief of the Indigent Blind and Lame.' The funds thus appropriated are to be put out on good mortgage security, or city stock, and after expending the necessary sum for the lot and improvements heretofore mentioned, the income of the remainder is to be exclusively applied to the comfort and accommodation of as many of the indigent blind and lame as the

income will admit of, after defraying the necessary expenses incident to such an establishment. And to the aforesaid mayor and corporation of the said city and their successors in office is intrusted the duty of appointing trustees or managers, and all other matters and things in any wise appertaining to the due fulfilment of the aforesaid bequest, the right regulating the establishment, and insuring the right application of the funds to the purposes heretofore stated, and for the sole use and benefit of the indigent blind and lame, giving preference to those persons resident in Philadelphia and its neighborhood."

IX. By the will of John Scottin; a ground-rent of $12, in trust, to deliver annually, on the "23d day of the second month," to the poor of the city, and of Southwark, $12 worth of bread.

X. By the will of Elliot Cresson; "$5000, in trust, as a perpetual fund, the income of which I desire shall be annually, for ever, expended in planting and renewing shade trees, especially in situations now exposing my fellow-citizens to the heat of the sun."

XI. By the will of Archibald Thompson; the residue of his estate to Cadwalader Evans and John Keble, in trust, to pay out of the income thereof, annually, 75*l.* for the support of the poor in the city of Philadelphia. For the better carrying into effect the intentions of the testator, the surviving trustee conveyed to the guardians of the poor the said devise "on the trust, and for the uses and purchases named in the said will," and on the further trust, "that they, the said guardians and their successors, do, and shall at all times, for ever, cause a separate account to be kept by their treasurer in the books of the corporation, respecting the yearly ground-rents hereby assigned, as provisions made by the will of the said Archibald Thompson for the poor of the city of Philadelphia, so that the same may never be blended with the moneys of the said corporation, and to and for no other use, intent, or purpose whatever,"

XII. By the will of James Dutton; the residue of his estate "unto the 'Guardians of the Poor of Philadelphia, Southwark, and the Northern Liberties,' and their successors," in trust, to improve the same and keep it as a fund, and to apply the net income "to the aid, comfort, and support of the poor of the Northern Liberties."

XIII. By will of Esther Waters; to the "Guardians of the Poor of Philadelphia, Southwark, and the Northern Liberties," $5000, in trust, to invest the same, and expend the income annually in the purchase of "firewood, or other fuel, for the use of the poor of Philadelphia."

XIV. By the will of George Emlen: two ground-rents, one of 90*l.* and one of 40*l.*, to "The Managers of the Hospital and Bettering House of Philadelphia, jointly," in trust, to apply the

[Philadelphia *v.* Fox.]

income to purchase fuel, and to distribute the same to "poor widows, such as are not assisted by any public charity," in the winter months; annually.

Subsequently, the managers of the hospital relinquished to the guardians of the poor all their interest in this bequest.

XV. By will of William Carter; ground-rents, amounting to 17*l.*, to "The Mayor and Commonalty of the City of Philadelphia," in trust, for the use and services of the almshouses belonging to the city, and the relief of the poor people in the same: and a ground-rent of 6*l.*, for the use of the poor people of the said city, "as well those whose names are to be found in the poor-book as others."

XVI. By the will of Ann Armit; certain messuages to her executors, in trust, to convey one thereof to "the Overseers of the Poor, or the Managers of the Bettering House in" this city.

XVII. By an Act of Assembly, approved the 18th day of March 1847, "The Spring Garden Association" was empowered to sell a certain lot of ground, and, after paying, &c., was directed to invest the balance of the purchase-money in the corporate loan of the district of Spring Garden: and the "Commissioners of the District of Spring Garden" were directed to apply the interest on said investment in the purchase of fuel, and distribute the same during the winter months of every year among such of the poor of said district as reside in said district east of Broad street.

XVIII. By the will of Paul Beck; a ground-rent of $500, in trust, to collect the same, and pay it over to the soup societies established in Philadelphia.

XIX. By the will of Thomas D. Grover; to the commissioners and inhabitants of Southwark all of his estate, except, &c., in trust, 1, From the income to appropriate the sum of $300 for the purchase of soup and bread, and to distribute the same during the winter season among "poor persons residing in Southwark." 2. To appropriate the income of the balance in the purchase of fuel, and "distribute the said fuel among white widows of respectable character, who are housekeepers or roomkeepers, born within the limits of the United States of America, whose husbands shall have died within the present defined boundaries of the district of Southwark, and to no other description of widows."

The legislature of Pennsylvania, by appropriate legislation, authorized the carrying out of the provisions of the will of Stephen Girard, and the condition having thus been complied with, his bequest of $300,000 to the Commonwealth was paid.

The city took possession of the property devised by Stephen Girard, and set apart the sums directed to supply fuel, and for the opening of Delaware Avenue; they erected the college buildings, furnished and opened them for the admission of orphans; they also erected the building required by the will of James Wills, and applied the income of his estate as directed by him.

[Philadelphia *v.* Fox.]

The Consolidation Act of 1854 merged the old city of Philadelphia, the various incorporated districts, and all the county of Philadelphia into one municipal corporation, by the title of "The City of Philadelphia." The act provided that "all the estates and incomes now held in trust by the county, present city and each of the townships, districts and other municipal corporations united by this act, shall be held by the city of Philadelphia upon and for the same uses, trusts, limitations, charities and conditions as the same are now held by the said corporations respectively."

In pursuance of the provisions of the Act of 1869 the twelve defendants last named were appointed members of the Board of Trusts by the judges of the courts, and with the mayor and presidents of the councils, who were created members by the Act of Assembly, demanded of the plaintiffs the trust property and the evidences of title. The demand was refused.

The bill set forth as is above stated, and averred—

31. That the effect of the Act of 1869 is to hinder and obstruct them in the discharge of their office of trustee in the cases herein mentioned, and to vest their powers and authority in agents for whose conduct they may be responsible, but in whose appointment they have no voice.

32. * * * That the said board is not entitled to such possession, or to exercise any control over the said trusts or trust estates by virtue of any power conferred or attempted to be conferred upon them by the said Act of Assembly: inasmuch as they believe and charge that the said act is unconstitutional, because it is an attempt to deprive the plaintiffs and their cestui que trust of their property in another mode than by the judgment of their peers, or by the law of the land.' And that especially as to the said trusts for the laying out of Delaware Avenue and widening Water street, as well as the other trusts in the will of Mr. Girard, the Commonwealth having for a consideration conferred upon the plaintiffs power to execute the same, cannot deprive them of that power without infringing so much of the Constitution of the United States as declares that no state shall pass any law impairing the obligation of contracts.

33. That by the will of Mr. Girard the remainder of the residue of his estate is devised for the further improvement and maintenance of his college, and to enable the city to provide for the security of persons and property by a competent police, and to improve the city property and the general appearance of the city, and in effect to diminish the burden of taxation. This devise is therefore for the benefit of the people of the city and the owners of property therein. The said testator further directs that if the city shall knowingly and wilfully violate any of the conditions contained in his will, that the said residue and accumulations be given and bequeathed to the Commonwealth of Pennsylvania,

except his real estate in the city of Philadelphia. The plaintiffs say that the parties interested in this gift for municipal purposes, namely, the people of the city, have now by their right to choose the legislative bodies of the corporation, control and supervision over their interest in this gift. But if this estate shall pass into the hands of the said board of trusts, it will pass into the care of a body beyond their control, in whose appointment they have no voice, whose proceedings are without publicity, and who, by reason of the mode of their constitution, are not subject to the supervision of, or liable to removal by a court of law. And they submit they may lose the benefit proposed to be conferred on them by the testator, not only without fault of their own, but without power to help themselves. And if it is intended that the Commonwealth by the creation of the board of trusts relinquishes her right of forfeiture, the plaintiffs submit that one having such a right cannot release it to the unloosing of the terms or conditions of a trust.

The prayers were:—

1. That the said Act of June 30th 1869 be declared unconstitutional and void.

2. That the defendants be enjoined from interfering with the trusts or trust estates mentioned and set forth in the bill.

3. General relief.

The defendants demurred.

Mr. Justice Williams at Nisi Prius sustained the demurrer and dismissed the bill. The defendants appealed to the court in banc, and assigned the decree of dismissal for error.

*E. Olmstead* and *Meredith* (with whom were *T. J. Barger*, City Solicitor, *J. Goforth* and *F. B. Gowen*), for appellants.— The plaintiffs are competent to take and hold these trusts: Vidal *v.* Girard, 2 How. 127; Cresson's Appeal, 6 Casey 450; Mayor *v.* Wills' Ex'rs., 3 Rawle 170. The act professes to be what it is not. It declares that the directors shall be considered as agents or officers of the city, while in fact the principal has no power to dismiss much less appoint them. The legislature cannot make this change: Brown *v.* Hummel, 6 Barr 86. The act is judicial, and beyond the power of the legislature: Bagg's Appeal, 7 Wright 512; Grim *v.* Weissenberg, 7 P. F. Smith 433; Norman *v.* Heist, 5 W. & S. 171; De Chastellux *v.* Fairchild, 3 Harris 18; Spragg *v.* Shriver, 1 Casey 286; Menges *v.* Dentler, 9 Id. 495. A municipal corporation may for some purposes be regarded as a private corporation: Saving Fund *v.* Philadelphia, 7 Casey 175; Bailey *v.* New York, 3 Hill 521. The trust under Girard's will for laying out Delaware Avenue, &c., having been executed, a money consideration having been paid to the legislature for the authority, the legislature cannot deprive the plaintiffs of their rights

14 P. F. SMITH—12

[Philadelphia *v.* Fox.]

under the will.   The legislature cannot take away the property of a municipal corporation without providing for the payment of its debts.   Every citizen of Philadelphia, and every owner of property in the territorial limits of the old city of Philadelphia, has a pecuniary interest in the devise of Mr. Girard.   When the wants of the college are supplied, and the police purposes satisfied, the surplus under Girard's will is to be applied in such a manner as will diminish the burden of taxation.   The property of the citizen or landowner or tax-payer in this prospective benefit of the fund, applicable to diminish his taxes, is as much guarantied and secured to him by the Constitution as more visible and tangible property.

Section 11 of the Constitution declares that all courts shall be open, and every man shall have remedy by the due course of law and right and justice administered without sale, denial or delay. The powers of the plaintiffs are to appoint agents to administer these trusts, and to define the duties of such agents.   This power the act proposes to transfer to a board composed of all the judges of this court and the judges of the Philadelphia courts, and takes away from the plaintiffs all control over the acts of the appointees of this board.   Therefore the real contest in this case is between the plaintiffs and the board of appointment; the members of that board of appointment could have been made proper parties as defendants in a bill asking for an injunction to restrain them from appointing the agents as trustees : McManus *v.* Phila. and R. Railroad, 9 P. F. Smith 330 ; Patterson *v.* Barlow, 10 Id. 54. If the judges, who claim the power of appointment of the officers to manage these trusts, are proper parties to a suit by the city of Philadelphia to determine their right to appoint, the effect of the Act of Assembly has been to deprive the plaintiffs of any tribunal before which their rights might be determined, other than such as are composed of those who claim in opposition to them the very powers, the rightful possession of which is the subject of controversy.   The courts are not open, and a remedy by due course of law given to a suitor, when every court is held by those who claim in opposition to him the very property, the title to which is the subject of litigation : Dr. Bonham's Case, 8 Rep. 118 ; Day *v.* Savadge, Hobart 87 ; Dyer 220, B. pl. 14 ; Littleton, § 212 ; London *v.* Wood, 12 Modern 669.   A judge may perform ministerial duties or not at his option : Kuhn *v.* U. S. Bank, 2 Ashm. 174.

The directors are not agents of the city.   It has no power to control or dismiss them, and could not be held liable for their malfeasance : Martin *v.* The Mayor of Brooklyn, 1 Hill 545 ; Prather *v.* City, 13 B. Monroe 559 ; Mayor *v.* Bailey, 2 Denio 433 ; Alcorn *v.* Philadelphia, 8 Wright 348 ; Story on Agency, § 456 a.

The city, in the administration of the trusts, is to be treated as

[Philadelphia v. Fox.]

a private corporation: Lloyd v. Mayor of New York, 1 Selden 374; Milhaw v. Sharp, 15 Barb. 193; Holland v. San Francisco, 7 California 377; Angell & Ames on Corporations, § 767; 2 Kent's Com. 305, 306, n.; Aberdeen Academy v. Mayor, 13 Smedes & Marshall 646; Louisville v. University, 15 B. Monroe 642; St. Louis v. Russell, 9 Missouri 507.

As to Acts of Assembly making changes in private corporations, election and appointment of trustees, &c.: Com. v. Bonsall, 3 Whart. 559; Ervine's Appeal, 4 Harris 264; 2 Story on the Constitution, § 1, 392; Plymouth v. Jackson, 3 Harris 44; Norris v. Abingdon Academy, 7 Gill & Johns. 7; State v. Hayward, 3 Richardson 389; Louisville v. Trustees, 15 B. Mon. 642; Yarmouth v. N. Yarmouth, 34 Maine 411; Sheriff v. Lowdnes, 16 Maryland 357; Edwards v. Jagers, 19 Indiana 407; Vincennes University v. Indiana, 14 How. 269.

As to judges being parties: Anon., 1 Salkeld 396; 1 Kent's Com. 448.

*P. McCall* and *Strong* (with whom was *J. Fallon*), for appellees.—If an Act of Assembly be within legislative power it is valid: Sharpless v. Mayor, 9 Harris 147; Speer v. Blairsville, 14 Wright 150; Com. v. Maxwell, 3 Casey 456.

The Act does not remove the city from the trusts, and appoint other trustees in its place. The city remains the trustee as before. The trust property and estates still remain vested in the city. The board of directors are officers of the city. If the charter of the city were repealed, the board of directors would fall with it. The source of their authority or the manner of their appointment has no bearing on their status as officers. A person may be a city officer, though not elected by the corporation.

The city is not to be regarded as a private corporation. In these trusts the city acts only as a municipal corporation—an instrument or agency of government to which a portion of the sovereign power is delegated for local purposes. It may take real and personal property upon trust: Vidal v. Girard, 2 How. 127; Girard v. Philadelphia, 7 Wall. 1. The objects of the trusts are of a public character, such as education, the care of the poor, &c., which fall within the scope of the duties of the city as a governmental agency: Wills Hospital, 3 Rawle 170. If the trustee corporation holds property clothed with public duties, the court has a right to interfere: Attorney-General v. Mayor of Liverpool, 1 M. & C. 171.

In the case of corporations created by the mere will of the legislature, there being no other party interested or concerned, whose franchises are not the result of contract, the legislature may at all times modify, change or annul their franchises as the public good may in their judgment require: The People v. Morris, 13

Wend. 337; The State *v.* Branin, 3 Zabr. 497; Reynolds *v.* Baldwin, 1 La. An. 162; Police Jury *v.* Shreveport, 5 Id. 661. The People *v.* Power, 25 Ill. 187; Robertson *v.* Rockford, 21 Id. 451; E. Hartford *v.* Hartford Bridge, 10 How. 534; Borough of Dunmore's Appeal, 2 P. F. Smith 374. Nor does it make any difference that the public corporation is organized for purposes of education and not of police: Trustees of Schools *v.* Tatman, 13 Ill. 27.

The mode in which public functionaries shall be chosen or appointed depends purely on the legislative will, and is a question of expediency addressed entirely to the wisdom of the legislature: People *v.* Draper, 1 Smith N. Y. 532; People *v.* Pinkney, 5 Tiffany 377; Baltimore *v.* The State, 15 Md. 376.

They referred to a number of Acts of Assembly of Pennsylvania authorizing municipal appointments outside of the corporation.

The limit to the power of the legislature over property owned by a municipal corporation is only that the legislature cannot divest the property of the corporation or divert it to other uses: Montpelier *v.* E. Montpelier, 29 Vt. 21.

The courts are open to all these parties on the rights here involved. A judge might sit, though a party: 2 Roll. Abr. 93; Dimes *v.* Gr. Junction Railroad, 3 H. of Lords Cases 787.

The opinion of the court was delivered, January 10th 1870, by SHARSWOOD, J.—The City of Philadelphia is beyond all question a municipal corporation, that is, a public corporation created by the government for political purposes, and having subordinate and local powers of legislation: 2 Kent's Com. 275; an incorporation of persons, inhabitants of a particular place, or connected with a particular district, enabling them to conduct its local civil government: Glover Mun. Corp. 1. It is merely an agency instituted by the sovereign for the purpose of carrying out in detail the objects of government—essentially a revocable agency—having no vested right to any of its powers or franchises—the charter or act of erection being in no sense a contract with the state—and therefore fully subject to the control of the legislature, who may enlarge or diminish its territorial extent or its functions, may change or modify its internal arrangement, or destroy its very existence, with the mere breath of arbitrary discretion. *Sic volo, sic jubeo,* that is all the sovereign authority need say. This much is undeniable, and has not been denied. That while it thus exists in subjection to the will of the sovereign, it enjoys the rights and is subject to the liabilities of any other corporation, public or private, is equally undoubted. This was the very object of making it a body politic, giving it a legal entity and name, a seal by which to act in solemn form, a capacity to contract and be contracted with, to sue and be sued, a *persona standi in judicio*,

to hold and dispose of property, and thereby to acquire rights and incur responsibilities. These franchises were conferred upon it for the purpose of enabling it the better to effect the main design of its institution, the exercise of certain of the powers of government, subordinate to the legislature, over a certain part of the territory of the state. But all this affects its relations to other persons, natural or artificial: it does not touch its relation to the state, its creator. It is nothing to the purpose, then, to show that a city may act in certain particulars as a private corporation, may make contracts as such, and that it cannot impair the obligation of a contract entered into by it in that capacity, because it may deem it for the benefit of its citizens to do so, nor is it in the power of the legislature, under the provision of the Constitution, to authorize the violation of such a contract: Western Saving Fund Society v. City of Philadelphia, 7 Casey 175, 185. It is equally aside from any question respecting its essential nature and subjection to the sovereign will to discuss its liabilities for the acts or neglects of its officers or agents, or whether it can rightly be made or has been made responsible for such as are not appointed or selected by itself, but by the state, or in some special mode provided by the state: Mayor v. Bailey, 2 Denio 433; Prather v. City, 13 B. Monroe 559; Alcorn v. The City, 8 Wright 348. The sovereign may continue its corporate existence, and yet assume or resume the appointments of all its officers and agents into its own hands; for the power which can create and destroy can modify and change. Indeed, the legislature of this Commonwealth, under the Constitution, could not by contract invest any municipal corporation with an irrevocable franchise of government over any part of its territory. It cannot alienate any part of the legislative power which, by the Constitution, is vested in a General Assembly annually convened: Parker v. Commonwealth, 6 Barr 507. If the legislature were to attempt to erect a municipality with a special provision that its charter should be unchangeable or irrevocable, such provision would be a nullity; for Acts of Parliament derogatory from the power of subsequent parliaments bind not: 1 Blacks. Com. 90.

That such political institutions have not and cannot have any vested rights as against the state, is strikingly illustrated and exemplified in The Borough of Dunmore's Appeal, 2 P. F. Smith 374, where it was held by this court that municipal corporations, being creatures of legislation, have no constitutional guaranty of trial by jury, and such trial may be denied them.

Such a municipal corporation may be a trustee, under the grant or will of an individual or private corporation, but only as it seems for public purposes, germane to its objects: The Mayor v. Elliott, 3 Rawle 170; Cresson's Appeal, 6 Casey 437; Vidal v. The Mayor, 2 How. 127. I am aware that it has been said by

[Philadelphia *v.* Fox.]

high authority in England that it may take and hold in trust for purposes altogether private: The Mayor *v.* Gloucester, 1 House of Lords 285. But the administration of such trusts, and the consequent liabilities incurred, are altogether inconsistent with the public duties imposed upon the municipality. It could hardly be pretended, I think, in this country that it could be a trustee for the separate use of a married woman, to educate the children of a donor or testator, or to accumulate for the benefit of particular persons. It certainly is not compellable to execute such trusts, nor does it seem competent to accept and administer them. The trusts held by the city of Philadelphia, which are enumerated in the bill before us, are germane to its objects. They are charities, and all charities are in some sense public. If a trust is for any particular persons, it is not a charity. Indefiniteness is of its essence. The objects to be benefited are strangers to the donor or testator. The widening and improvement of streets and avenues, planting them with ornamental and shade trees, the education of orphans, the building of school-houses, the assistance and encouragement of young mechanics, rewarding ingenuity in the useful arts, the establishment and support of hospitals, the distribution of soup, bread or fuel to the necessitous, are objects within the general scope and purposes of the municipality. The king himself may be a trustee, though he cannot be reached by the process of any court without his consent: Hill on Trustees 49; and so may the state, though as I take it under the Constitution, only for objects germane to the purposes of government. The government of the United States has accepted and administered such a trust under the will of James Smithson "for the promotion of knowledge among men." When, therefore, the donors or testators of these charitable funds granted or devised them in trust to the municipality, they must be held to have done so with the full knowledge that their trustee so selected was a mere creature of the state, an agent acting under a revocable power. Substantially they trusted the good faith of the sovereign. It is plain—too plain, indeed, for argument, that the corporation by accepting such trusts, could not thereby invest itself with any immunity from legislative action. Such an act could not change its essential nature. It is surely not competent for a mere municipal organization, which is made a trustee of a charity, to set up a vested right in that character to maintain such organization in the form in which it existed when the trust was created, and thereby prevent the state from changing it as the public interests may require: Montpelier *v.* East Montpelier, 29 Verm. 21. This whole question is put at rest, and that as to one of the most important of these trusts and as to this trustee, by the opinion of the Supreme Court of the United States in Girard *v.* Philadelphia, 7 Wallace 14: "It cannot admit of a doubt," says Mr.

[Philadelphia v. Fox.]

Justice Grier, " that where there is a valid devise to a corpora-
tion, in trust for charitable purposes, unaffected by any question
as to its validity because of superstition, the sovereign may inter-
fere to enforce the execution of the trusts, either by changing the
administrator if the corporation be dissolved, or if not, by modi-
fying or enlarging its franchises, provided the trust be not per-
verted, and no wrong done to the beneficiaries. Where the trustee
is a corporation, no modification of its franchises or change in its
name, while its identity remains, can affect its rights to hold pro-
perty devised to it for any purpose." With equal plausibility
might it be pretended that the acceptance by the government of
the United States of the bequest of James Smithson limited the
power of amendment contained in the Federal Constitution. If
it could have such effect, the only logical consequence would be
that the acceptance of a trust would be *ultra vires* and void: and
so if the acceptance of a trust by a municipal corporation can
operate to impair the power of the sovereign over it as such, the
acceptance is a nullity.

In consistency with these views, for which I have forborne to
cite cases which might, however, be heaped up *ad nauseam,* on
what principle can the Act of June 30th 1869 (Pamph. L. 1276)
be declared unconstitutional? It provides merely that one class
of the functions of the municipality shall be administered in a
manner different from that which has been used heretofore. The
head and front of its offending hath this extent—no more. It is
a change in internal organization. It provides a separate body
of citizens for the administration of the trusts vested in the city.
It makes that body a permanent one, holding their offices during
good behavior—it imposes upon it all the duties devolved on the
corporation itself as trustee—it perverts no one of the trusts—
it does wrong to none of the beneficiaries. We have nothing to
do with the wisdom of the measure—with the policy of having
such a board dissociated from the general government of the city,
or with the mode of its selection. Those are questions exclusively
for the legislature. No one I think can doubt that it was entirely
competent for that authority to vest the entire management and
control of all municipal affairs in just such a body as that consti-
tuted by this act. If they could do the greater, they can do the
less. They could make a similar provision for any other depart-
ment of the municipality. They might establish a board of police,
of highways, of sewerage, of cleansing. They have often done
so. The departments of the prison, of health, of the poor and of
the public schools have been placed in the hands of bodies of men
constituted and appointed just as is " The Board of Directors of
City Trusts," and no one has ever thought of questioning the
constitutionality of these several acts of the legislature. For if
the legislature, acting for the state, can resume all the franchises

of the municipality into its own hands, which is a conceded premise, it can certainly resume any part. *Omne majus continet in se minus.*

It is said, however, that as to some of the trusts under the will of Stephen Girard, there was a contract which the legislature cannot constitutionally impair. If this were even so, it would be no valid ground for declaring the act void as to all the other trusts. But there is no such contract impaired by this act. Mr. Girard left $300,000 to the Commonwealth, to be applied to the purposes of internal navigation, on the condition that certain laws should be passed as to Delaware avenue, Water street and wooden or brick-paned buildings. The money was accepted and the laws were passed. They stand unchanged and unrepealed on the statute book. No alteration or modification of them by any of the provisions of this act has been or can be pointed out. It is a contract, if a contract at all, completely executed and fulfilled on both sides.

It remains to consider one more ground of objection to this act. It is seriously and earnestly contended that it is in contravention of the 11th section of the 9th article of the Constitution, which declares "that all courts shall be open and every man for an injury done him in his lands, goods, person or reputation, shall have remedy by the due course of law, and right and justice administered without sale, denial or delay." It is supposed, if I understand the argument aright, that because the judges of this court, and of the District Court and the Court of Common Pleas of Philadelphia, are vested with the function of appointing the directors of the city trusts, of displacing them if unfaithful, and of filling vacancies, they are thereby rendered incompetent to decide any controversies which may arise out of the management of the trusts by them. It is said they are thereby made judges in their own cause. Conceding it to be unconstitutional for the legislature to make a man a judge in a case in which he is a party litigant, it is not easy to comprehend how it reaches this act. As was well said in the argument, this very proceeding is a practical refutation of the idea that this court or any other court is not open to these plaintiffs or anybody else who may have just cause of action at law or in equity against this Board of City Trusts. Nay, can any one doubt that this proceeding might have been anticipated *in limine,* and a bill filed against the board of appointment itself to enjoin it from proceeding to obey the behests of the legislature? A judge who is actually a trustee of a charity may from delicacy decline to sit in a case in which he is a party as such, but surely, as he has no pecuniary interest in the result, there is no moral or legal reason why he should not. If it is necessary it is his duty to do so. I have no doubt it has been often done, but I will mention one instance within my own experience. The city of

[Philadelphia v. Fox.]

Philadelphia in 1859 filed a claim for taxes against the building occupied by the American Philosophical Society on Independence Square under a grant from the Commonwealth, and issued a scire facias thereon in the District Court for the city and county of Philadelphia, and it was necessary that the court should decide upon the liability of the society to pay those taxes. My Brother Hare and myself were both members of the society, and would gladly have excused ourselves from taking any part in the decision. But it was impossible. Without one of us at least there could have been no court. We heard and decided the case in favor of the society, and that judgment was affirmed by this court: City of Philadelphia v. The American Philosophical Society, 6 Wright 9. The true rule unquestionably is that wherever it becomes necessary for a judge to sit even where he has an interest —where no provision is made for calling another in, or where no one else can take his place—it is his duty to hear and decide, however disagreeable it may be. The rights of the other party require it: 2 Roll. Ab. 93; Dimes v. Grand Junction Railroad, 3 House of Lords Cases 759. The Act of Assembly of April 14th 1834, § 37, Pamph. L. 349, makes provision for special courts in four cases specified—where the president judge is personally interested in the event of any cause depending, when the title of either party is derived from or through him or where he holds under the same title, when any near relation of the president shall be a party or interested, or whenever he has been attorney or counsel for either of the parties in the cause or any other cause touching the same subject-matter; and by the 8th section of the Act of April 4th 1843, Pamph. L. 133, the provisions of the Act of 1834 above referred to, are extended to the judges of the Orphans' Court, Register's Court, Quarter Sessions or Oyer and Terminer. It will be observed that the case of a judge being a nominal party is not specified as a disqualification unless he is personally interested. This court has held that an objection to competency, under the act for the establishment of special courts, must be addressed to the discretion of the judge himself, and his decision is not reviewable on a writ of error: Barrington v. Bank of Washington, 14 S. & R. 405; Ellmaker v. Buckley, 16 Id. 72; Philadelphia Library Co. v. Ingham, 1 Whart. 72. "This," said Gibson, C. J., " is conformably to the principle of the common law, which exempts a judge from challenge." That a judge is one of the trustees of a charity is no disqualification, much less where he merely appoints such trustee. No one ever heard before that he was disqualified to sit in the cause of a trustee of his own appointment. In the case directly before us there is nothing in the position of the judges as members of the board of appointment which could possibly influence their opinion or prevent a fair and

[Philadelphia *v.* Fox.]

impartial consideration and decision of any cause which might grow out of their proceedings.

Decree affirmed, and appeal dismissed at the costs of the appellants.