## Ellwood Country Club License

A. G. *Helbling*, for appellant.

*Reed, Ewing & Ray*, for respondent.

SOHN, J., August 21, 1948.—The Ellwood Country Club, in 1947, held a catering club liquor license, issued by the Pennsylvania Liquor Control Board. An application was filed requesting the renewal of said license for the year 1948-1949. On March 24, 1948, the Pennsylvania Liquor Control Board advised applicant that a license had been refused because a certification had been filed with the board that the electors of North Sewickley Township, Beaver County, had voted against the granting of retail malt beverage and retail liquor licenses in that township. Because legal questions only were involved, the board waived the

usual hearing and authorized an appeal to the court. Upon petition of applicant, an appeal to the court was allowed.

North Sewickley Township in Beaver County, consists of three election districts—district numbered one, district numbered two, and Ellwood City District. The Borough of Ellwood City, in Lawrence County, lies adjacent to North Sewickley Township, in Beaver County. By three annexation proceedings of June 30, 1917, June 21, 1920, and October 16, 1941, the part of North Sewickley Township, Beaver County, known as the Ellwood City district was annexed to and became a part of the Borough of Ellwood City. The area included in the fourth ward of the Borough of Ellwood City is identical with the Ellwood City district of North Sewickley Township.

On September 9, 1947, pursuant to petition to and resolution by the County Commissioners of Beaver County, a referendum on the question of granting malt beverage licenses and liquor licenses was submitted to the voters of districts numbered one and two in North Sewickley Township, Beaver County. No ballots were prepared or delivered to the Ellwood City district. The result of this referendum was that a majority of the votes cast were opposed to the granting of malt beverage licenses and liquor licenses. The Pennsylvania Liquor Control Board assigns this reason for its refusal to renew the applicant's license for the year 1948-1949.

The appeal raises the following questions:

1. Where a part of a township situate in one county is adjacent to a borough situate in another county, and the adjacent part is annexed by the borough, and made by law a separate voting district in the township, is a referendum held in the township in which the annexed district did not participate, invalid by reason of the nonparticipation of the electors of said district?

2. Were the ballots submitted to the electors so worded as to confuse the electors as to the particular area in which the referendum was taken?

No testimony was offered on behalf of appellant, or by those who seek to sustain the action of the Pennsylvania Liquor Control Board. The board refused to renew licenses in district numbered one and district numbered two in North Sewickley Township, in Beaver County, and did renew licenses in the Ellwood City district, situate in Beaver County but comprising a part of the Borough of Ellwood City. All of the borough except the district in question is situate in Lawrence County, Pa.

The Pennsylvania Liquor Control Act of November 29, 1933, special session, P. L. 15, 47 PS §477-502, as amended, provides for a referendum upon petition "in the municipality or township". Municipality is defined as "any city, borough, incorporated town or township of this Commonwealth". The Beverage License Law contains similar provisions.

The General Borough Act of May 4, 1927, P. L. 519, as amended by the Act of June 4, 1937, P. L. 1613, 53 PS §15301, provides in part as follows:

"Where lands situated in one county now are or hereafter shall be annexed to a borough situated in an adjoining county, or where two or more boroughs are or hereafter shall be consolidated, either or any of them being situated in different counties, said lands which are so annexed or consolidated shall be governed for borough and school purposes as a part of the borough to which they are annexed, or as a part of the newly consolidated borough, and for county and poor purposes they shall be governed as a part of the county or poor district in which they are actually situated, which said government shall be administered according to the general law relating to boroughs,

school districts, counties, and poor districts, except as hereinafter otherwise provided.

. . . . . . . . .

"All prosecutions and summary convictions for violations, within land situated in one county and annexed to, or consolidated with, a borough situated in an adjoining county, of borough ordinances, and the school laws, and the laws relating to motor vehicles, shall be had only in the county wherein is situated the borough to which the said land is annexed, or in case of a consolidation of boroughs, the county in which a majority of the inhabitants of the consolidated borough resided at the time of such consolidation, and the several courts of record in said county are hereby given jurisdiction thereof.

"All civil suits (except those arising out of reports of viewers as hereinafter stated), and all prosecutions and summary convictions for all other offenses, misdemeanors, and crimes committed within land situated in one county and annexed to a borough situated in an adjoining county, or situated in one county and consolidated with a borough situated in an adjoining county in which resided, at the time of such consolidation, a majority of the inhabitants of the consolidated borough, shall be had in the court wherein the same would have been tried if said land had not been annexed to, or consolidated with, the said borough, and the jurisdiction of the several courts of this Commonwealth to hear and determine the same shall not be affected in any way by the annexation or consolidation of such land to such borough, except that the courts of the county wherein is situated the borough to which the land has been annexed, or in which a majority of the inhabitants of the consolidated borough resided at the time of the consolidation, shall have exclusive jurisdiction to hear and determine all prosecutions and summary convictions for violations

within such land of borough ordinances, the school laws, and the laws relating to motor vehicles.

.    .    .    .    .    .    .    .    .

"The proper courts of the county wherein the land is actually situated shall have jurisdiction of all matters arising out of elections, except that election contests (including primary election contests and other proceedings relating to primary elections) arising out of borough and school elections, and elections in the matter of bonds for borough and school purposes, and other questions relating to borough and school matters, shall be tried in the proper court of the county wherein is situated the borough to which such land is annexed, or of the county in which a majority of the inhabitants of a consolidated borough resided at the time of such consolidation, and said courts are hereby given jurisdiction thereof."

As provided by law, the Election Board of Beaver County has, for a number of years, conducted elections in the Ellwood City district. At these elections the residents of the Ellwood City district vote for election officers within the district, and for county officers in Beaver County on nomination petitions filed in Beaver County. All other candidates appearing on the ballot such as school directors, borough officers, justice of the peace, and constables are certified pursuant to law, by the Election Board of Lawrence County to the Election Board of Beaver County, and the names so certified are placed on the ballot. The candidates for these offices are voted on by the electors of the borough of Ellwood City. This procedure is authorized by law. The result is that all office holders except election officers and county officers, for whom residents of the Ellwood City district vote, are those who are nominated for office in the borough of Ellwood City.

The question specifically to be decided by the court is whether, for the purposes of the referendum as

to the sale of malt beverages and liquors, the Ellwood City district is a part of the Borough of Ellwood City, Lawrence County, or whether it is a part of the Township of North Sewickley, in Beaver County. Clearly it cannot be both—it must be one or the other. The impossibility of such a situation is illustrated by the problem which would be presented if at the same election the voters of the Borough of Ellwood City, in Lawrence County, voted on a referendum as to malt beverage licenses and the voters of North Sewickley Township, in Beaver County, voted on a referendum as to the granting of liquor licenses. Such a situation would clearly outline the problem before the court. We come then to a determination of the question as to which municipality is contemplated by the statutes relative to a referendum.

In Philadelphia v. Fox et al., 64 Pa. 169, 180, Mr. Justice Sharswood referred to a municipality as follows:

"The City of Philadelphia is beyond all question a municipal corporation, that is, a public corporation created by the government for political purposes, and having subordinate and local powers of legislation: 2 Kent's Com. 275; an incorporation of persons, inhabitants of a particular place, or connected with a particular district, enabling them to conduct its local civil government: Glover Mun. Corp. 1. It is merely an agency instituted by the sovereign for the purpose of carrying out in detail the objects of government—essentially a revocable agency—having no vested right to any of its powers or franchises—the charter or act of erection being in no sense a contract with the state —and therefore fully subject to the control of the legislature, who may enlarge or diminish its territorial extent or its functions, may change or modify its internal arrangement, or destroy its very existence, with the mere breath of arbitrary discretion."

The Beverage License Law and the Liquor Control Act do not define municipality, nor do they provide the answer to the question before us because municipality, as therein referred to, may be the Borough of Ellwood City, or the Township of North Sewickley. The Pennsylvania Liquor Control Act of 1933, P. L. 15, as amended, 47 PS §744-3, provides:

"(a) This act shall be deemed an exercise of the police power of the Commonwealth for the protection of the public welfare, health, peace and morals of the people of the Commonwealth, and to prohibit forever the open saloon; *and all of the provisions of this act shall be liberally construed for the accomplishment of this purpose.*" (Italics supplied.)

The license fees paid to the Pennsylvania Liquor Control Board by licensees with places of business in the Ellwood City district have heretofore been received and retained by the Borough of Ellwood City. The Statutory Construction Act of May 28, 1937, P. L. 1019, art. IV, sec. 51, 46 PS §551, provides in part as follows:

"The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the Legislature. Every law shall be construed, if possible, to give effect to all its provisions.

. . . . . . . . .

"When the words of a law are not explicit, the intention of the Legislature may be ascertained by considering, among other matters—(1) The occasion and necessity for the law; (2) the circumstances under which it was enacted; (3) the mischief to be remedied; (4) the object to be attained; (5) the former law, if any, including other laws upon the same or similar subjects; (6) the consequences of a particular interpretation; (7) the contemporaneous legislative history; and (8) legislative and administrative interpretations of such law."

Section 52 in part provides: "In ascertaining the intention of the Legislature in the enactment of a law, the courts may be guided by the following presumptions among others:

"1. That the Legislature does not intend a result that is absurd, impossible of execution or unreasonable;

"2. That the Legislature intends the entire statute to be effective and certain;

"5. That the Legislature intends to favor the public interest as against any private interest."

Section 58 in part provides:

"The rule that laws in derogation of the common law are to be strictly construed, shall have no application to the laws of this Commonwealth hereafter enacted. . . . All other provisions of a law shall be liberally construed to effect their objects and to promote justice."

We therefore approach the problem presented in the instant case with the intent of liberally construing the statutes to protect the public welfare, health, peace and morals of the people of the Commonwealth. Our construction shall effectuate the intention of the legislature. We must assume that the legislature did not intend a result that is absurd, impossible of execution, or unreasonable. These rules in turn require that we reach a conclusion in accord with law, and one which is reasonable and practical in application. The conclusion is therefore justified that upon annexation by a borough of territory adjacent to the borough and situate in another county, the territory so annexed remains a part of the county in which it is situate only for county purposes. For all municipal purposes it becomes a part of the municipality to which it has been annexed. For local governmental purposes, it legally no longer is a part of the township from which it was detached. It logically follows that for the purpose of a referendum, the administration of beverage

license laws and liquor laws must be conducted in accord with the conclusion, the questioned territory is a part of the borough. Any other conclusion we believe would be illogical and would lead to confusion.

We find no appellate court decision in Pennsylvania wherein the question presented in this case has been decided. In McGreevy et al. v. Washington County Commissioners, 42 D. & C. 143, 146, Judge Burnside decided a similar question of a municipal referendum on Sunday motion pictures. The Borough of McDonald is divided into four election districts. Three are located in the County of Washington, and one in the County of Allegheny. A petition for a referendum was filed in Washington County, pertaining to the exhibition of motion pictures on Sunday in the Borough of McDonald. Ballots were prepared and made available to the voters of the election districts in the Borough of McDonald, which are located in the County of Washington. No ballots were made available for the fifth precinct, situate in Allegheny County. Because the Election Board of Washington County did not certify the necessary information to the Election Board of Allegheny County, no ballots were provided by Allegheny County. Judge Burnside declared the election null and void. He said:

"It will be noted that the Act of 1935 provides that the referendum shall be submitted to 'the will of the electors' and makes Sunday exhibition unlawful if 'a majority of the voters' in any municipality are not in favor of the continuance of such exhibitions. Clearly it was the legislative intent in submitting the referendum to the 'electors of any municipality' that all qualified electors would have an opportunity to express their views upon the question. If everyone had had a chance to vote upon the subject it would have made no difference if some did not see proper to avail themselves of the opportunity; but as there were no ballots

presented to a large number of the qualified voters in the Borough of McDonald, it would be unfair to treat as a legal election the result as shown by the count of the votes cast by only a portion of the voters.

"Clearly the election held on November 5, 1940, was not an expression of all the 'electors of the municipality', and the 'will of the electors' with respect to the referendum was not properly ascertained in accordance with the legislative intent.

"We feel that the manner in which the election was held was in violation of the spirit of article 1, section 5 of the Constitution of the Commonwealth of Pennsylvania, which provides: 'Elections shall be free and equal . . .'

"Elections are not free and equal when voters are denied the right and opportunity to cast their votes: Winston v. Moore, 244 Pa. 447. Elections are 'free and equal' only when all who possess the requisite qualifications are afforded a reasonable opportunity to vote.

"It so happens that the particular question involved by the facts of this case has never been decided by the courts of this Commonwealth. A similar question was before the Court of Appeals of Kentucky in the case of Wallbrecht et al. v. Ingram et al., 164 Ky. 463, 175 S. W. 1022. In that case the law required the county clerk to furnish 50 per cent more ballots for each precinct than there were votes cast in the said precinct at the last state or national election. The question to be voted on was a referendum of the liquor laws, and the voters turned out in vastly greater numbers than they had turned out at the preceding state and national election, so that in certain precincts there was an insufficient number of ballots furnished for the accommodation of the voters on the question of this liquor referendum. The Court of Appeals in construing the Kentucky Constitution, which is worded exactly the same as our own, used the following language (p. 473):

" 'The question then is, was the election a free and equal one within the meaning of the Constitution, and if it was not, what should be declared to be the result? Strictly speaking, a free and equal election is an election at which every person entitled to vote may do so if he desires, although in dealing with the practical aspect of elections it could hardly be said that if only a few were prevented from voting the election would not be free and equal in the constitutional sense. The very purpose of elections is to obtain a full, fair and free expression of the popular will upon the matter, whatever it may be, submitted to the people for their approval or rejection, and when any substantial number of legal voters are, from any cause, denied the right to vote, the election is not free and equal in the meaning of the Constitution."

In Early et al. v. Rains et al., 121 Ky. 439, 89 S. W. 289, the Court of Appeals of Kentucky, in discussing a similar situation, held:

"Where a town or city is the unit, for the purposes of local self-government, and particularly upon the subject of licensing or prohibiting the liquor traffic, it is supreme and entire within its jurisdiction. It is so recognized by the Constitution and the statutes. Whether it is in one county or another, or partly in two or more, is immaterial. For it is not the county, but the town, that is deemed the government in such matters. Votes affecting the rights and interest of the town as a municipality are taken, and its obligations are treated, entirely without regard to the county organization or government. Express provision is made by statute for holding elections in such towns. Section 1445, Ky. St. 1903. The elections treated of in the last-named section of the statute are not only the selection of municipal officers, but the submission of any question or proposition to be voted on by the municipality as such. The manner of certifying and canvass-

ing the returns of the election is explicit, and covers literally and in spirit the very condition and kind of election involved in this appeal. It was the duty of the county court of Whitley county to order the election for the whole town of Corbin, 25 per cent of the legal voters of that town, based upon the last preceding general election, having petitioned for it, whether or not the petitioners lived in one or more precincts, or in one or more counties. It is enough, if they are citizens and legal voters of the town. (Smith v. Patton, 103 Ky. 444, 20 Ky. Law Rep. 165, 45 S. W. 459; Nall v. Tinsley, 107 Ky. 441, 21 Ky. Law Rep. 1167, 54 S. W. 187.) The result of such election, if in favor of prohibition should be certified to both counties in which the town is situated."

The entire Borough of Ellwood City, including the part in Beaver County, is a municipal unit for the purposes of local self-government. The intent and purpose of the administration of the Beverage License Law and the Pennsylvania Liquor Control Act is on the basis of such local unit. This fact applies to applications, payment of license fees to the municipality and referendum. Any other conclusion would be illogical. That a part of the borough is situate in another county is immaterial. The statutes provide for a referendum in a municipality or township. The determination of the question before us must be resolved by a determination of which municipality or township is contemplated by the provisions of the act. Does it refer to the Township of North Sewickley, or does it refer to the Borough of Ellwood City? The statutes are to be liberally construed for the accomplishment of the purposes therein set forth. These purposes can best be accomplished by determining that for the purposes of a referendum, the sale of malt beverages and liquors shall be allowed or prohibited according to the will of the electors of the entire borough. We therefore con-

clude that the County Board of Elections of Beaver County properly submitted the referendum to the voters in the first and second districts of North Sewickley Township, in this county, and did not submit the question to the electors in the Ellwood City district.

The second question is whether the ballots were defective, in that the ballot, as submitted was misleading to the voter. The complaint is that the ballot refers to the first district and second district. That part of the ballot is as follows:

"OFFICIAL BALLOT
SPECIAL PUBLIC ELECTION TO DECIDE THE QUESTION
OF THE GRANTING OF LIQUOR LICENSES FOR THE
SALE OF LIQUOR
AND
THE GRANTING OF MALT AND BREWED BEVERAGE
RETAIL DISPENSER LICENSES
For Consumption On Premises Where Sold In The
TOWNSHIP OF NORTH SEWICKLEY
First District
County of Beaver, State of Pennsylvania

Special Election, Tuesday, September 9, 1947."

The ballot submitted to the electors of the second district was identical except the words "Second District" were substituted for the words "First District". An examination of the ballot shows that the word "First District" and "Second District" of the respective districts were used only in one place on the ballot. The questions submitted both as to malt and brewed beverage retail dispenser licenses and liquor licenses were specifically in the words required by the statutes, that is, "for sale in the Township of North Sewickley". In the respective blocks where the questions are submitted, no mention is made of an election district. It must be presumed that an elector would carefully read the questions before voting. These questions were precisely as directed by the statute. They were clear and

explicit. No elector could be misled thereby. Appellant also contends that the questions were misleading be- cause an elector might assume that electors in the Ellwood City district were also voting on the same questions. Our discussion of the first question presented for our determination answers this contention. The entire Borough of Ellwood City is one municipality. Districts numbered one and two of North Sewickley Township constitute the other for the purposes of referendum.

In Kittanning Country Club Liquor License Case, 330 Pa. 311, in which a ballot was held to be lacking in matters essential to the free expression of the will of the voters, thereby rendering the election a nullity, the question as submitted, included the name of the district. That situation does not exist in the instant case. The question before the court for determination relative to the sufficiency of the ballot is answered by the opinion of Mr. Justice Stern in Oncken et al. v. Ewing, 336 Pa. 43, 47, where he said:

"The invalidation of a public election is a judicial act of serious import, and is justified only by circumstances of the most compelling nature. Of course, there may be cases where there has been deliberate fraud on the part of election officials; or where a statute expressly provides that certain mistakes or defects in the ballots shall invalidate the election; or where some fundamental preliminary of the election has been ignored, as in Nyce v. Board of Commissioners, 319 Pa. 353; or where, as in Kittanning Country Club's Liquor License Case, 330 Pa. 311, the form of the ballot is so lacking in conformity with the law and so confusing that the voters cannot intelligently express their intentions; in such instances it may be proper and necessary for a court to nullify an election. But where the irregularity complained of could not reasonably have misled the voters and did not result in the question at issue being presented to them unintelligibly,

the election cannot be judicially overturned because of some innocuous deviation from a statutory requirement which might have been previously rectified through resort to the remedy given by the law for that purpose."

We find no circumstances of a most compelling nature in this case, requiring, by judicial act, the invalidation of a public election. We are of the opinion that the irregularity in the ballot in the instant case could not reasonably have misled the electors and did not result in the question at issue being presented to them unintelligibly.

### Order

And now, to wit, August 21, 1948, for the reasons stated in the foregoing opinion, the appeal of the Ellwood Country Club is dismissed; costs to be paid by appellant.