## Girard's Estate

Before Van Dusen, P. J., Sinkler, Klein, Bolger, Ladner, and Hunter, JJ.

*Abraham L. Shapiro*, assistant city solicitor, and *Robert McCay Green*, city solicitor, for exceptant.

*Joseph P. Gaffney*, contra.

SINKLER, J., December 24, 1943. — The will of Stephen Girard has been construed judicially in the following reported cases: Vidal et al. v. City of Philadelphia et al., 2 How. 126 (1844) ; Philadelphia v. Girard's Heirs, 45 Pa. 9 (1863) ; Girard v. Philadelphia, 7 Wall. 1 (1868) ; Philadelphia v. Fox et al., 64 Pa. 169 (1870) ; Girard's Appeal, 4 Pennypacker 347 (1880).

The labors of learned jurists, both the judiciary and the bar, in these cases have greatly lightened our burden in determining the questions now before us. No less has the learned auditor, the Honorable George Wharton Pepper, aided us through the effective fulfillment of his duties. We are all of the opinion that the exceptions to his report should be dismissed and his recommendations adopted.

Ordinarily, in such an event, little more is required of this court than a decree to this effect. In the present case, because of the interest of the public in the controversy, and by reason of the earnest efforts of counsel for the City of Philadelphia and for the Board of City Trusts, we are impelled to consider seriatim the sundry grounds contained in the exceptions.

Before so doing, a recital of certain circumstances in the life of testator, related by counsel for the board, seems timely.

He left home, near Bordeaux, France, at an early age, and for years of his life which more fortunate than he are able to devote to attending school he was on board ship and educated himself. This experience, it is believed, inspired him to establish a college where could be obtained training for orphans who would otherwise be unable to receive systematic instruction. Counsel also expressed the belief that testator was the first individual—at least in this country—to leave a great fortune, which he had himself amassed, to create and endow an institution for the welfare of mankind, and that others may have been led through knowledge of his foundation to create and endow institutions of like character and, as well, for religious, charitable and scientific purposes.

The important question dealt with by the auditor "is whether the city is presently entitled to an award of some or all of the balance of income shown by the restated account for uses other than the maintenance

of Girard College and, if so, how much income should be so awarded, and upon what terms?" He recommends that no present award be made to the city and that the restated balances of both principal and income be awarded to the accountant to be administered in accordance with the terms of the will.

The history of the case is recited in the auditor's report, and it is unnecessary to narrate again what he has so well written. An outline will suffice.

Pursuant to a decree of this court entered April 18, 1938, an account was filed by the Board of Directors of City Trusts, showing its administration of the estate of Stephen Girard, deceased, for the period from January 1, 1928, to December 31, 1937.

By decree entered November 22, 1938, the account was referred to the above-named auditor.

His report, dated July 10, 1941, contains the recommendation above set forth.

Exceptions to his report were filed by the city and dismissed by his supplemental report dated August 18, 1941.

The exceptions thereto filed by the city are now before us.

The brief for exceptant, the City of Philadelphia, and that contra the exceptions, filed in behalf of the accountant, display learning and careful labor. The respective contentions are set forth in orderly manner, thereby measurably reducing our difficulty in reaching our determination.

The synopsis of exceptant's contentions is to be found on page 3 of the brief. The first is as follows:

"I. Does the will of Stephen Girard *direct* distribution annually of all income arising from the residuary fund?"

Exceptant contends that all of such income must be distributed annually, without any accumulation whatsoever; that the discretion of the board in this respect

is limited to determining the amount of income required each year for maintaining Girard College—the balance, if any, to be distributed to the city. It is further contended that, if the trustees determine that all the income in any year is required for the college, their decision may be reversed only by showing a gross abuse of discretion on their part; but, in the absence of such determination, any unexpended balance remaining at the end of each year is payable to the city.

The argument proceeds to the effect that retention of income to provide for future requirements of the college constitutes an unlawful accumulation, which testator himself could not have directed; likewise a violation of the duty by the board to deal fairly with the beneficiaries. Determination of this question involves construction of the will, particularly the twentieth to the twenty-fourth clauses.

Exceptant recites the contention of the board that, until such time as the capacity of the college to receive additional students is reached, no income is distributable to the city. By resolution of the board, the capacity is fixed at 2,000 students.

Counsel for the city, by diligent efforts, have discovered the brief filed by Horace Binney in the case of Vidal et al. v. City of Philadelphia et al., supra, wherein he established the validity of the trust against the proceedings instituted by the heirs of Girard. The substance of Binney's argument is set forth in exceptant's brief, and much of it is quoted verbatim. On page 9 appears:

". . . the primary object in the disposal of the income of the final residuary fund is the College *contingently*—and the city until the contingency happens. The College must first take the income to the necessary extent, *when* the contingencies shall happen, and the city is to take it *until* they shall happen."

The gist of exceptant's contention is that each year's surplus income belongs to the city, unless actually re-

quired by the college and only to the extent that it is required. Accumulation of income for the purpose of increasing the facilities of the college is not contemplated by the will.

In behalf of the board, it is contended that throughout the litigation of Girard's will the courts have uniformly recognized the primary intent of testator to benefit the college; that the college is the object to which all others are subservient.

The grounds for the respective contentions are fully set forth in the briefs and in substance do not differ from those presented to the auditor. No lengthy discussion seems presently necessary.

The auditor's report relates in detail what may be termed the legal history of the estate and of Girard College. In Vidal et al. v. City of Philadelphia et al., supra, the Supreme Court of the United States decided that the educational trusts created by the will were valid charitable trusts, and that the city had capacity to accept and administer them. After this decision had been rendered, the "Mayor, Aldermen and Citizens of Philadelphia" accepted the trust, erected and furnished the college buildings, and administered the college. Thereafter the Legislature of Pennsylvania enacted the so-called Consolidation Act, enlarging the limits of the city and modifying in many respects its form of government. This legislation gave rise to proceedings against the city, instituted by certain heirs of Girard, who contended that the dissolution of the old municipal corporation and its absorption into the new body politic defeated the testamentary purposes expressed in the will beyond the erection and maintenance of the college, and that the surplus not needed for maintenance should be awarded to them. The Supreme Court of the United States affirmed the decision of the Supreme Court of this State, to the effect that the claim of the heirs be dismissed. The city had power to ex-

ecute all of the trusts created by the will, and "the difficulties anticipated by the bill . . . are imaginary. They have not arisen, and most probably never will"; Girard v. Philadelphia, 7 Wall. 1, 16. The opinion of the court is summarized "in fine" as follows: The residuary estate vested in the corporation (city) on valid legal trusts which it was competent to execute. The identity of the corporation is not destroyed by the "Consolidation Act", nor does the change in its name, increase in population, or enlarged area affect its title held at the time of the consolidation.

Following his analysis, summarized above, the auditor pronounced, in order, the three uses to which the balance of income presently to be distributed might be applied. The first, he finds, is "the educational use of which Girard College is the concrete expression, this being the object nearest the testator's heart and the primary object of his bounty." This object, he proceeds, presents no administrative difficulty. Respecting the second object, the promotion of law and order in the city by improvement of the police, the auditor considers, presents a problem due to change of circumstances since testator's death. The third object is for municipal improvements such as will, in effect, relieve citizens of the city from some of their burden of taxation. This final purpose he considers the most indefinite of all.

"It was evidently indefinite in the mind of the testator, and it is equally indefinite at the present time. In respect of both the second and third purposes, the auditor concludes that some exercise of the cy pres power would be involved in order that the court might make awards" for such indefinite purpose.

It is manifest that the auditor, in weighing his problem, has applied the established law of this case rather than determine the solution of a novel question.

At this point, consideration of the Act of June 30, 1869, P. L. 1276, is timely. Thereby the duties, rights,

and powers of the city concerning all property and estate dedicated to charitable uses or trusts then vested in the city shall be discharged by the city through the instrumentality of a board constituted as therein provided, who shall exercise all the duties concerning such property appropriated to charitable uses to the same extent that these duties have theretofore been vested in the city or its officers.

The auditor comments that the Board of City Trusts is not the agent of the city to administer the trust property, as was the Board of Commissioners under the Act of 1832. The board, he continues, has succeeded to all the duties given by the will, except the function of holding title to trust property.

The validity of this legislation is upheld in Philadelphia v. Fox et al., supra, and in Girard's Appeal, supra.

The brief of exceptant, below the heading now under consideration, submits these questions:

(a) Whether the retention of unexpended income by the board from year to year constitutes an unlawful accumulation.

(b) Whether the board has discretion, despite the provisions of the will, to retain unexpended income for the uses of the college.

(c) Whether, though it be found that such discretion exists, the continued retention of unexpended income under existing circumstances constitutes such an abuse of discretion as justifies intervention by the court.

The argument upon these points is set forth in exceptant's brief, and many cases are cited and analyzed. The accountant's brief contains a full presentation of the other side of the case. The conclusion of the auditor bears the apt heading, "Good Faith the Criterion". The board, he finds, is accountable for acting in good faith in the exercise of discretion conferred by the will,

and for nothing more, and if good faith exists the discretion of the board will not be overruled by the court. The board may not use the trust fund for purposes other than those authorized by the will, nor accumulate unspent income through "perverse acquisitiveness". The auditor finds, first, that the board is in good faith exercising testamentary discretion and, second, that so long as the board continues to administer the trust in such manner the court will not substitute its judgment for that of the board.

The auditor, under the heading, "The Precedents", next reviews the reported cases, wherein the principles applicable to the present case were involved. It is not necessary to recite again these authorities.

Under the title, "Secondary Trust Problem", the auditor expresses his satisfaction with the apparent view of the board that the advantage to the college in expending available funds for improvement of the college—testator's primary purpose—outweighs the intangible benefits accruing to the city's citizens by the application of such funds to purposes contemplated in the creation of the secondary trusts. To what he has said there is to be added the statement that extension of capacity of the college relieves the city of the cost arising from education of a corresponding number of pupils.

While the finding of fact that the board administered the trust in good faith renders unnecessary consideration of whether the board administered it wisely, the auditor records his observation that the board could hardly have adopted any policy other than that which they have pursued—the accumulation of surplus income for future needs. In 11 years out of a period of 30, actual operating deficits have been incurred. Distinction is drawn between an unlawful accumulation expressly directed by a testator and the reservation of surplus income by a trustee in the exercise of adminis-

trative discretion. Reference is made to Mathues' Estate, 322 Pa. 358 (1936). It was contended that a trustee was unlawfully accumulating income retained to meet needs reasonably anticipated. The Supreme Court held that the term "unlawful accumulation" is applied only where the income is retained for the deliberate purpose of increasing the principal and does not apply where income was reserved to meet exigencies which arise and which might otherwise cause a depletion of principal.

The auditor concludes that the contention of the city cannot be maintained. To do so would divert from the college income required for the needs listed in his findings of fact.

The foregoing comprises a review of the findings of the auditor respecting the direction of the will with regard to the distribution of income arising from the residuary estate, and the authority of the board to exercise discretion in retaining surplus income for future needs of the college.

The next question to be considered is the power of the board to set up from income reserve funds to guard against depreciation and obsolescence of real estate improvements or losses in investments.

The auditor distinguishes the two senses wherein the word "improvements" is used: the one to designate the construction of buildings upon unimproved real estate; the other, the renovation or betterment of existing buildings. In the first case, he finds it proper to charge to principal the cost of erecting new buildings on vacant land; in the second, to charge to income the cost of alterations or improvements. He finds that the policy adopted by the board of charging to income improvements coming within the second category does not constitute an unlawful accumulation of income. After giving due consideration to the arguments presented against and in favor of his finding, we are agreed that his conclusion is correct.

The auditor distinguishes the usual form of trust, where a beneficiary receives income for life and the principal is given, after the termination of the equitable life estate, to the remaindermen, from the trust for a public use, designed to exist perpetually. In the one, a conflict of interest exists between the life tenant and remaindermen; in the other, there is no such conflict.

The first question raised is whether or not the cost of certain repairs, alterations, and improvements to buildings constructed at the expense of principal was properly charged to principal. In lieu of testimony, a stipulation was filed with the auditor, whereby it was agreed that he should determine whether the accountant properly charged to income the cost of: (1) Alterations to the Lafayette Building; and (2) permanent improvements to dwellings situate in South Philadelphia, known as "The Girard Estate". The auditor finds that these expenditures were properly charged against income. He further finds that the practice in this respect followed by the board does not involve an unlawful accumulation of income, and that it is not in contravention of the directions imposed by the will.

In logical sequence follows this topic: When principal account has been charged with the outlay for the construction of buildings, may the amount be recouped from income over a term based upon the expected period of revenue production? Payments were begun in 1910, pursuant to a resolution of the board adopted in 1910, directing that one half of one percent of the gross amount expended from the capital be taken from the rentals derived from the real estate so improved and credited to the sinking fund. This was increased to 1½ percent in 1929. It appears that no payments have been made since 1932. The income from this fund was added to principal each year.

A sinking fund was created in 1918 to return to principal the cost of erecting the building situate at

Eleventh and Girard Streets, to continue to December 1, 1936, three percent annually of the construction cost.

By resolution of the board adopted February 14, 1936, $1,130,800 annually was transferred to "Reserve for Depreciation of Office Buildings, Dwellings, etc."

The auditor sustains "the establishment and maintenance of these obsolescence funds". He points out that, while the cost of erection has been paid out of principal, the corpus has not been increased when the cost is amortized out of income. This is to say, the building becomes unrentable and valueless. The auditor decides that when the reserve fund has reached the cost of construction it should be closed out, even though the building still exist and be tenantable. The testamentary provision imposed upon the trustees respecting the sale of real estate owned by testator renders the recoupment from income of the cost of erecting buildings thereon essential to prudent administration.

Under the heading "Premiums and Discounts on Bonds and Method of Carrying Bond", the report discloses the procedure followed by the board in such administration. Leave is given to amortize the premium on bonds purchased for the trust, and direction is given to credit income discounts actually realized. Respecting the "Method of Carrying Bonds", an exception filed by the city is sustained by the auditor, pro forma. It is related that accountant has adopted in the supplemental account the modification directed by the auditor.

"Gains and Losses." The parties, it is related, appear to agree that the gain on the sale of a bond is to be applied to increase the principal. When a loss is sustained, they are not agreed. The accountant contends that it should be borne by income; the city that it be borne by principal. The auditor concludes that losses should be primarily charged against principal

up to the amount of gains realized, and against income only to the extent that losses exceed gains.

Part first of the report concludes with recommendations for the future management of the trust estate: the maintenance of a running account; the setting up of reserves against future losses. Ordinarily upon the audit of an account this court will determine only such questions as are involved in the making of awards. We refuse to determine questions designed to obtain an adjudication of an advisory nature. The present case is not an ordinary one. A great institution is vitally interested and, in a degree, this community is concerned. While the recommendations of the auditor respecting future management of the trust estate are not adopted, they are approved.

Likewise we depart from our usual practice to express our judgment in respect of another feature of future administration of the trust. Because of the interest of the City of Philadelphia as secondary beneficiary of the trust, it is suggested that the board give information in its annual report, or otherwise, to the Council of the City of Philadelphia et al. of any important change which it contemplates in methods of making charges to principal and income accounts, other than those approved or suggested by the auditor, and of any plans for expansion of the college or substantial increase in the number of students.

This opinion follows the outline of exceptant's brief. In the earlier part hereof our conclusions are set forth respecting the subject matter contained in part second of the auditor's report.

The first paragraph of "Conclusion" is as follows:

"The auditor accordingly decides that the board has been, and is, acting in good faith; that the record discloses no ground for overruling or controlling the discretion of the board; that no present award to the city should be made by the court but that the restated

balances of both principal and income as shown by the accounts and supplement filed (together with all income to date of distribution, less distributions and adjustments heretofore made as set forth in said accounts and supplement) should be, and they hereby are, awarded to the accountant to be administered in accordance with the provisions of the will."

This conclusion and, as well, the recommendations of the auditor are adopted. The balances of principal and income held by the accountant are awarded to accountant, to be administered in accordance with the provisions of the will.

All exceptions to the auditor's report are dismissed.