

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-6-1995

# In Re: School Asbestos Lit.

Precedential or Non-Precedential:

Docket 94-1820

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"In Re: School Asbestos Lit." (1995). *1995 Decisions*. Paper 156.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/156

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————————————

No. 94-1820

———————————————

IN RE: SCHOOL ASBESTOS LITIGATION

SCHOOL DISTRICT OF LANCASTER;
MANHEIM TOWNSHIP SCHOOL DISTRICT;
LAMPETER-STRASBURG SCHOOL DISTRICT;
           and
NORTHEASTERN SCHOOL DISTRICT

                    vs.

LAKE ASBESTOS OF QUEBEC, LTD.;
THE CELOTEX CORPORATION;
RAYMARK INDUSTRIES, INC.; UNION CARBIDE CORP.;
ASBESTOSPRAY CORP.; SPRAYO-FLAKE COMPANY;
NATIONAL GYPSUM CO.; SPRAYED INSULATION, INC.;
ASBESTOS FIBRES INC.; DANA CORPORATION;
U.S. GYPSUM; U.S. MINERAL PRODUCTS COMPANY;
SPRAYON INSULATION & ACOUSTICS, INC.;
SPRAYON RESEARCH CORP.; KEENE CORP.;
WORBEN CO., INC.; WILKIN INSULATION COMPANY;
W.R. GRACE & CO.;
OWENS-CORNING FIBER-GLAS CORPORATION;
STANDARD INSULATION, INC.;
NORTH AMERICAN ASBESTOS CORPORATION;
CASSIAR RESOURCES LTD.; BELL ASBESTOS MINES, LTD.;
ASBESTOS CORPORATION LIMITED;
SOUTHERN TEXTILE CORP.;
OWENS-ILLINOIS, INC.; TURNER & NEWALL LIMITED;
THE FLINTKOTE CO.; FIBREBOARD CORPORATION;
GAF CORP.;
UNIROYAL, INC., CAPE ASBESTOS; PFIZER, INC.;
KAISER CEMENT CORPORATION; BES-TEX, INC.;
GEORGIA-PACIFIC CORP.; KAISER GYPSUM COMPANY

Board of Directors of City Trusts,

                              Appellant

———————————————————————————

On Appeal from the United States District Court
For the Eastern District of Pennsylvania
(No. 83-CV-00268)

—————————————————

ARGUED:  March 6, 1995

Before:  BECKER, SCIRICA and WOOD, Jr.,[*]  Circuit Judges.

(Filed June 6, 1995)

DAVID A. GRADWOHL, ESQUIRE  (ARGUED)
JAMES E. MILLER, ESQUIRE
One Liberty Place
Thirty-Second Floor
Philadelphia, PA  19103

Attorneys for Appellant

BARRY H. BOISE, ESQUIRE  (ARGUED)
ALAN KLEIN, ESQUIRE
2200 PSFS Building
12 S. 12th Street
Philadelphia, PA  19107

Attorneys for Appellee

—————————————————————————————

OPINION OF THE COURT
—————————————————————————————

WOOD, Jr., Circuit Judge.

The Board of Directors of City Trusts [Board] appeals the district court's order finding that the Board and Girard College [College] were included in a certified class involving a nationwide class action suit against Uniroyal and numerous other defendants in regard to the presence of asbestos in public and private schools.  Because the district court found the appellants

———————————————

*.  The Honorable Harlington Wood, Jr., United States Circuit Judge for the Seventh Circuit, sitting by designation.

were members of the class, the Board was enjoined from pursuing its own state asbestos lawsuit against Uniroyal. The district court held that the Board, as a member of the class, was bound by the Uniroyal settlement, and under the Anti-Injunction Act, 28 U.S.C. § 2283, it was necessary in aid of the court's jurisdiction to enjoin the appellant's state court action. The Board appeals.

## I.

The Board was created by a Pennsylvania statute in June 1869 to act as a trustee in administering a number of estates and trusts for the benefit of the City of Philadelphia.[1] The estate involved here is the Estate of Stephen Girard, which came into existence in 1831. The Girard Estate is the largest estate and

---

[1]The Board's powers are statutorily defined as follows:

> All and singular the duties, rights and powers of the city of Philadelphia, concerning all property and estate whatsoever, dedicated to charitable uses or trusts, the charge or administration of which is now or shall hereafter become vested in or confined to the city of Philadelphia, shall be discharged by the said city through the instrumentality of a board composed of fifteen persons, including the mayor of said city, the presidents of the select and common councils for the time being, and twelve other citizens appointed as hereinafter provided, to be called directors of city trusts, who shall exercise and discharge all the duties and powers of said city, however acquired, concerning any such property appropriated to charitable uses, as well as the control and management of the persons of any orphans or others, the objects of such charity, to the extent that the same have been or hereafter may be, by statute law or otherwise, vested in or delegated to the said city for the officers thereof.

Act of June 30, 1869, P.L. 1276, 53 P.S. § 16365, repealed in part, Act of November 19, 1959, P.L. 1526.

trust owned and administered by the Board. After making numerous gifts to various institutions and individuals, Mr. Girard devised and bequeathed his entire residuary estate to the City of Philadelphia in trust for the creation of an "orphan establishment." In furtherance of the deceased's wishes, Girard College was established as an institution for orphan children in Philadelphia. The Board acts as trustee in managing the Girard Estate and the College. The Board also manages approximately 110 other estates and trusts, which it administers according to the wishes of its benefactors.

Girard College initially admitted only white male orphans, but has since expanded its admission criteria to include all minorities and children not considered orphans in the traditional sense (only one absent parent).[2] The primary mission of Girard College is to act as a guardian to orphaned children by providing for their full development and nurturing needs. Pursuant to this mission, the orphans not only receive food, clothing, health care and a caring place to live, but in addition, the Board provides them with an education at the College through grade twelve. Most children live on the school grounds only through the school year, while some remain all year. Except for Girard College, the Board

---

[2]The Philadelphia Orphans' Court oversees certain aspects of Girard College. Only children who qualify as orphans under the definition established by the Orphans' Court may be admitted to Girard College. See e.g., 20 Pa. Stat. §§ 711, 712, 722, 7142.

does not own or operate any estate or trust which requires the Board to provide educational services to children incident to its primary mission of administering estates and trusts pursuant to its statutory and fiduciary duties.

Therefore, due to the Board's unique status in reference to Girard College, many regulatory statutes do not apply, including the Pennsylvania Public School Code. The Board in the past, however, has voluntarily chosen to follow various regulatory standards to protect and benefit the orphan children. In 1988, and in compliance with the Asbestos Hazard Emergency Response Act [AHERA], 15 U.S.C. § 2641 et seq., the Board voluntarily submitted an "Asbestos Management Plan." The Board submitted the Plan on AHERA forms and listed Girard College as an "LEA."[3]

In 1983, the first case was filed in regard to asbestos in public and private schools. In 1984, under the Federal Rules of

---

[3]"LEA" stands for local educational agency, which is defined as "a public board of education or other public authority legally constituted within a State for either administrative control or direction of, or to perform a service function for public elementary or secondary schools in a city, county, township, school district, or other public subdivision of a State, or such combination of school districts or counties as recognized in a State as an administrative agency for its public elementary or secondary schools." 20 U.S.C. § 2891(12).

Civil Procedure Rule 23(b)(3), the district court certified, and

the Third Circuit affirmed, the following class:

> All entities which own or operate in whole or in part any public educational facilities, as defined in Section 198(a)(10) of the Elementary and Secondary Education Act of 1965, 20 U.S.C. § 2854, throughout the United States; and all entities which own or operate in whole or in part any non-public, non-profit elementary or secondary educational facilities, including entities with religious affiliations, in the United States, to the extent that such non-profit entities are owned or operated by one or more non-profit corporations or associations no part of the net earnings of which inures, or may lawfully inure, to the benefit of any private shareholder or individual.

Pretrial Order 20.  See also In re Asbestos Litigation, 104 F.R.D. 422 (E.D. Pa. 1984), aff'd, 789 F.2d 996 (3d Cir.), cert. denied, 479 U.S. 852 (1986).


In 1988, the class definition was amended and limited to

exclude certain schools which were operated by the states:

> The definition of the litigation class certified in this matter is limited and excludes any elementary or secondary facilities owned or operated by Ohio or Maryland or any other state as a service incidental to the provision by the state of other substantial services.

Pretrial Order 110.


Shortly after the class was certified, a "Notice of Class

Action Relating to School Asbestos Claims" was mailed nationwide

to all schools included on a list generated by a market data

retrieval organization.  The list was not modified to include

only the schools that were members of the certified class.

Girard College appeared on the list as a "private school."  The

Board has no records indicating it received this notice or opted

out of the class.  The Notice provided that if you did not opt

out of the class by December 1, 1987, you would be bound by any class judgment.

In September 1991, plaintiff members of the class and Uniroyal entered into a Settlement Agreement releasing Uniroyal. This notice was also sent to Girard College. In December 1991, the district court entered final judgment approving the Uniroyal Settlement.

In February 1994, the Board instituted a state court action against Uniroyal as well as various architects, contractors and engineers. The Board of Directors of City Trusts v. Ballinger & Associates et al., January Term, 1994, No. 3346. The Board sought recovery for property damages to certain buildings and other structures it owns and operates caused by the presence of asbestos products and materials. The buildings in the state action include Girard College and other commercial buildings located in Girard Square, a city block in Philadelphia. Uniroyal moved for an order restraining the Board from litigating its claims on the basis that the Board is bound by the Uniroyal settlement. In a pretrial order, the district court granted the motion and held that Girard College was a member of the certified class and therefore enjoined under the Anti-Injunction Act, 28 U.S.C. § 2283,[4] from maintaining a state action against Uniroyal. The district court held:

_____

[4]Section 2283 provides:

> A court of the United States may not grant an injunction to stay proceedings in a State except as expressly authorized by Act of Congress, or where

In this Court's opinion, the Board of City Trusts is a local education agency.  It is both public and private.  By statute of the Commonwealth of Pennsylvania, it has been created as a City agency.  The delegation of the supervision of the Board of City Trusts rests with the Orphans' Court.  It is through the City of Philadelphia that that Trust was to be administered.

. . .

It is public in the sense that its actions are actions of the -- are state action[s].  It is private in the sense that it was private money that caused the college or other charitable functions to be established and maintained.  But it was through the public arm that that intent was to be carried out.  So, it is a -- as private money going through a state-created agency for the education and the associated growth of young people into adulthood.

The Board of City Trusts has identified itself as a local education agency in the AHERA compliance document.  It has identified itself in various briefs as an arm of the City.  That statute which created the Board of City Trusts shows that it is -- it was created as an agency of Philadelphia.  It has all the character of a local education agency.

The Board appeals the district court's finding that it is a member of the certified class and is thereby enjoined from pursuing its state court asbestos action against Uniroyal <u>et</u> <u>al</u>.

II.

The district court's application of the class certification to the Board requires plenary review since it involves the application of the law to the facts.  <u>Levendos v. Stern Entertainment</u>, 909 F.2d 747, 749 (3d Cir. 1990).  Similarly, the review of the district court's decision to enjoin the Board's

(..continued)
necessary in the aid of its jurisdiction, or to protect or effectuate its judgments.

state court action under the Anti-Injunction Act, 28 U.S.C. § 2283, is also a question of law that requires plenary review. 1975 Salary Retirement Plan v. Nobers, 968 F.2d 401, 405 (3d Cir. 1992); see also Carey v. Pennsylvania Enterprises, Inc., 876 F.2d 333, 337 (3d Cir. 1989); Ortiz v. Eichler, 794 F.2d 889, 891-92 (3d Cir. 1986).

## III.

A class must be clearly defined and only members can be legally bound by settlements or judgments in the class action. In re School Asbestos Litigation, 789 F.2d 996, 1005 (3d Cir.), cert. denied, 479 U.S. 852 (1986). The parties agree that the initial class certification by the district court can be further divided into two subclasses. Sub-section [1] of the certification order includes all public educational facilities as defined by Section 198(a)(10) of the Elementary and Secondary Education Act of 1965; and Sub-section [2] includes non-public, non-profit elementary or secondary facilities to the extent they are owned or operated by one or more non-profit corporations or associations.[5] The district court found that Girard College was

---

[5]As mentioned, Pretrial Order 110 amended the initial class certification. The 1988 amendment excludes any "elementary or secondary school facilities owned or operated by any state as a service incidental to the provision by the state of other substantial service." Because we find Sub-section [2] is the relevant section, whether or not the Board is excluded under Pretrial Order 110 need not be reached.

a quasi-public and quasi-private educational facility because it was created by the state but funded with private money. It is not disputed, however, that Girard College is excluded from Sub-section [1] of the class certification because it is not a public school as defined by Section 198(a)(1) of the Elementary and Secondary Education Act of 1965. Appellees argue that the Board is a non-profit association that owns and operates Girard College, a private educational facility within the definition of Sub-section [2]. The Board contends, however, it is not a non-profit association, but a state-created agency and Girard College is a charitable trust created by the residuary estate of Stephen Girard's Will. If the Board is a non-profit association, the Board is within the class certification and enjoined from pursuing its state court action. If, however, the Board is a state-agency or at least not a non-profit "association", it is not within the class and the Board may maintain its state court action against Uniroyal. Both sides competently argued their positions and attempted to aid this court in its determination of this complicated issue.

The relevant part of the class certification, Sub-section [2], states:

> [A]ll entities which own or operate in whole or in part any non-public, non-profit elementary or secondary educational facilities, including entities with religious affiliations, in the United States, <u>to the extent that such non-profit entities are owned or operated by one or more non-profit corporations or associations</u> no part of the net earnings of which inures, or may lawfully inure, to the benefit of any private shareholder or individual.

Pretrial Order 20 (emphasis added).

The center of the dispute focuses on the common usage of the term "association."  The Board argues it is a state agency because it was created by a Pennsylvania statute in 1869. Further, the Board contends that the United States Supreme Court in Pennsylvania v. The Board of Directors, 353 U.S. 230, 231 (1957), previously found the Board to be a "state agency."  That case was a race discrimination claim brought against Girard College.  The Court held that for purposes of the Fourteenth Amendment, the actions of the Board were state actions.  Id. at 231.  The appellees counter that the finding by the Supreme Court that the Board is a state agency for state action purposes is different from finding that the Board is an agent of the state in the present asbestos litigation.  The appellees also point out that in the Board's briefs in previous cases, the Board has labeled itself as an "arm of the City."  The district court also labeled the Board as a "City Agency" because it was created for the City of Philadelphia and it is through the city that the trust is to be administered.  As a preliminary matter, we doubt that the Board is a city agency.  The Board was created by the state for the purpose of administering charitable bequests left to and for the benefit of Philadelphia.  Although the Board performs this function for the city, it is neither a part of the city nor responsible to the city.  The Board was designed merely to independently carry out this service for the city whenever the city is left sizable estates that require management.  The Philadelphia Home Rule Charter Section A-100(a)(3) also

explicitly exempts the Board from any relationship with the city.[6]  The Board of Directors of City Trusts appears, therefore, not to be a city agency.

The issue then turns on whether the Board is a state agency and if not, whether it can be labeled a non-profit association. The appellees argue that the term "association" is broad enough to include the Board of Directors of City Trusts.  As defined by **Black's Law Dictionary**, association means "[t]he act of a number of persons in uniting together for some special purpose." **Black's Law Dictionary** 121 (6th ed. 1990).  The appellees view the Board as a group of fifteen members united for the special purpose of administering trusts bequeathed to the City.  The appellees contend that to find the Board is not an association would be to contort the common usage of the term.  The appellants maintain it can not be an association because it is an agency of the state.  The composition of the Board is too unique to resolve the issue by merely labeling it as an association.

We must look to state law in defining the structures and powers of non-profit corporations.  <u>Federal Election Comm'n v. National Right to Work Comm.</u>, 459 U.S. 197, 204 (1982).  Under Pennsylvania law, it remains unclear as to the meaning of a non-

---

[6]Section A-100(a)(3) of the Philadelphia Home Rule Charter provides that "[e]xcept as otherwise specifically provided, this charter shall not apply to the Board of Directors of City Trusts and to any institutions operated by it."

profit association.  The only statute that comes close to defining the term is 42 Pa. Cons. Stat. Ann. § 8332.1, which concerns non-profit associations in relation to a manager, coach, umpire or referee negligence standard.[7]  The Board of Directors of City Trusts would not seem to fit within this definition.  At all events, we find that for another reason the Board of Directors of City Trusts cannot be an association.  The appellees want to label the Board an association while acknowledging that Girard College is a charitable trust.  However, in reality, the two are not distinct legal entities.  It is stretching the contours of the framework in which the Board was established to label the Board as an association when the Board is acting as a trustee on behalf of a charitable trust.  To call the Board an association, would be really calling Girard College an association, which it clearly is not.  As is demonstrated in this suit, to sue Girard College, you must sue the Board of Directors

---

[7]The statute defines "nonprofit association" as:

> An entity which is organized as a nonprofit corporation or nonprofit unincorporated association under the laws of this Commonwealth or the United States or any entity which is authorized to do business in this Commonwealth as a nonprofit corporation or unincorporated association under the laws of this Commonwealth, including, but not limited to, youth or athletic associations, volunteer fire, ambulance, religious, charitable, fraternal, veterans, civic, county fair or agricultural associations, or any separately chartered auxiliary of the foregoing, if organized and operated on a nonprofit basis.

42 Pa. Cons. Stat. Ann. § 8332.1(d).

as its trustee. The Supreme Court appeared to use a similar analysis when it found the Board to be a state agency. Although it was Girard College which had discriminated against the African-Americans in refusing to admit them to the orphanage, the Court found the Board was acting as a trustee based on the power and authority given to it by state law, and therefore responsible under the Fourteenth Amendment for the College's action. Here the Board is bringing the suit (rather than defending against one), but it is still acting only as a trustee on behalf of Girard College. The Board has the authority to sue and may be sued pursuant to the state statute which created the Board. Although the context of the present litigation is different from the context of the previous Supreme Court suit, the Board acts only as a trustee of Girard College and therefore the same analysis is applicable. Finding that the Board is not an association, it is not included within the certified class and the appellants may proceed with their state court asbestos litigation along with the many others who are also not included in the class against Uniroyal et al. Therefore, the district court must be REVERSED.

_____