Richard W. BURCIK and City of Philadelphia, Trustee Acting by the Board of Directors of City Trusts, Girard Estates, Appellants,

v.

Larry CAPLEN, Neil B. Caplen, Jill Caplen Schecter, and Stanley B. Caplen.

Commonwealth Court of Pennsylvania.

Argued March 5, 2001.

Decided July 17, 2002.

Reargument Denied Sept. 16, 2002.

Paul R. Fitzmaurice, Philadelphia, for appellants.

Neil E. Jokelson, Philadelphia, for appellees.

BEFORE: McGINLEY, J., LEADBETTER, J., and MIRARCHI, JR., Senior Judge.

OPINION BY Judge LEADBETTER.

The issue in this appeal is whether sovereign or governmental immunity applies to the Board of Directors of City Trusts (Board), a board created by State statute to act as an agent for the City of Philadelphia in the administration of charitable trusts held by the City as trustee. Asserting immunity in preliminary objections, Richard W. Burcik, the general manager of the Board, sought dismissal of a claim for tortious interference with contract. The Court of Common Pleas of Philadelphia County concluded that the Board is not immune and overruled the preliminary objection. Burcik filed this appeal and, after careful consideration, we reverse.

The cause of action arises from a failed real estate transaction. The Caplen family, acting as a partnership, agreed to sell numerous Caplen properties to Richard Burcik, for use by Girard College, which the Board administers as agent for the City in its capacity as trustee. After Burcik and the Board indicated they would not complete the deal the Caplens expected, the Caplens sued Burcik, the Board, and Girard College. In five counts, the Caplens asserted claims for: (1) breach of

contract; (2) fraud; (3) negligent misrepresentation; (4) intentional interference with existing or prospective business relations; and (5) promissory estoppel. In ruling on preliminary objections, common pleas dismissed counts 1 through 3 and 5 for failure to aver a cause of action but refused to dismiss count 4 for tortious interference. The court rejected the assertion that sovereign or governmental immunity barred claims in tort and certified the interlocutory order for immediate appeal pursuant to 42 Pa.C.S. § 702(b). Burcik filed the present appeal challenging common pleas' conclusion that the Board is not immune.

The Board was created by Section 1 of the Act of June 30, 1869, P.L. 1276 (the Act), which states:

All and singular the duties, rights and powers of the city of Philadelphia, concerning all property and estate whatsoever, dedicated to charitable uses or trusts, the charge or administration of which is now or shall hereafter become vested in or confined to the city of Philadelphia, shall be discharged by the said city through the instrumentality of a board composed of fifteen persons, including the mayor of said city, the presidents of the select and common councils[1] for the time being, and twelve other citizens, appointed as hereinafter provided, to be called directors of city trusts, who shall exercise and discharge all the duties and powers of said city, however acquired, concerning any such property appropriated to charitable uses, as well as the control and management of the persons of any orphans or others, the objects of such charity, to the extent that the same have been or hereafter may be, by statute law or

otherwise, vested in or delegated to the said city or the officers thereof.

53 P.S. § 16365 (footnote added). Pursuant to Section 2, the twelve citizen members of the Board are selected by a board of appointment comprising the "judges of the supreme court, together with the judges of the district court and the court of common pleas of the City and county of Philadelphia." 53 P.S. § 16366. Section 4 directs, in pertinent part, that the Board shall "make an annual report [of its activities] to the councils of the City, to the board of appointment, and to the legislature of Pennsylvania." 53 P.S. § 16368. Section 6 states, in part, that "[t]he said directors [of city trusts], in the discharge of their duties, and within the scope of their powers aforesaid, shall be considered agents or officers of said city...." 53 P.S. § 16370.

In concluding that the Board is not a State agency subject to sovereign immunity, common pleas looked to the language in the statute that created the Board and found: (1) no explicit statement that the Board is an agency of the Commonwealth; (2) no direction that the Board perform a public function; and (3) that the Board is composed of public and private appointees. Common pleas further concluded that the Board is not a local agency subject to immunity under 42 Pa.C.S. § 8541 because it does not perform a governmental function. Common pleas, quoting *Wilson v. Board of Directors of City Trusts*, 324 Pa. 545, 188 A. 588 (1936), stated: "[the Board] performs a part of the city's duties, and as such, could be considered a part of the city government, but its functions are apart from the general governmental powers exercised by the city itself. 188 A. at 593." *Caplen v. Burcik*, (No. 3144 Feb.

---

1. Formerly, City council was comprised of the select and the common councils; now the legislative power is vested in a single City council. *See* Act of June 25, 1919, P.L. 581, § 1, 53 P.S. § 12521.

Term 2000, filed August 4, 2000), slip op. at 27, 2000 WL 33711068, *13. This quote from the opinion in *Wilson* merely states the obvious, *i.e.*, the Board is not the City and does not do what the City government does. *Cf. Philadelphia v. Local 473 Int'l Bhd.*, 96 Pa.Cmwlth. 629, 508 A.2d 628 (1986) (concluding that the Board's employees are not City employees). However, this fact does not resolve whether the Board functions as an agency of the City.

Common pleas also based its conclusion that the Board is not a local agency on Section A–100 of the Philadelphia Home Rule Charter, which "exempts the Board from any relationship with the City" and states, "[e]xcept as otherwise specifically provided, this charter shall not apply to the Board of Directors of City Trusts and to any institutions operated by it." The notes following Section A–100 of the Charter state that the Board is not subject to the Charter in order to protect its special status as a trustee. The fact that the Board is not governed by the City Charter is not decisive of the present issue.

Common pleas also pointed to two federal decisions. First, in *Poitier v. Sun Life*, No. A.98–3056, 1998 WL 754980 (E.D.Pa., Oct. 28, 1998), an unpublished decision, the United States District Court found that Girard College's disability benefit plan is not a "governmental plan" under ERISA [2] because the College as administered by the Board is not a political subdivision. *Id.* at *2. Second, in *In re Asbestos Litigation*, 56 F.3d 515 (3d Cir.1995), the Court of Appeals, in concluding that Girard College and the Board were not within the class of plaintiffs bound by the settlement of an action for asbestos contamination in schools, stated in *obiter dicta* that "[w]e doubt that the Board is a city agency." *Id.* at 520. The court based its conclusion in part on its understanding that the

Board "may be sued pursuant to the State statute which created [it]." *Id.* at 521. This understanding is erroneous; the statute contains no language supporting this statement. Inasmuch as *Poitier* is neither on point nor, as an unpublished opinion, is it authoritative and the statement in *Asbestos Litigation* is based upon a misunderstanding, these cases are of no assistance in resolving the present issue.

Burcik argues that, having been created by State statute, the Board qualifies for sovereign immunity as an independent Commonwealth agency. In support of his contention, Burcik points to decisions of the Supreme Courts of both the United States and Pennsylvania, which considered whether the Board and Girard College are private or public entities for Fourteenth Amendment purposes. Initially, the Pennsylvania Supreme Court reasoned that the College and the Board later created to oversee its administration were private entities based on its origins in the bequest of private property. *In re Girard's Estate*, 386 Pa. 548, 127 A.2d 287 (1956), *rev'd*, 353 U.S. 230, 77 S.Ct. 806, 1 L.Ed.2d 792 (1957). In reversing this decision, the United States Supreme Court declared that the Board is a State actor because it acts on behalf of the City as trustee of Girard's bequest and, therefore, is forbidden under the Fourteenth Amendment from discriminating on the basis of race in admissions to Girard College. *Commonwealth v. Bd. of Directors of City Trusts*, 353 U.S. 230, 231, 77 S.Ct. 806, 1 L.Ed.2d 792 (1957). On remand, in *Girard College Trusteeship*, 391 Pa. 434, 138 A.2d 844 (1958), the Pennsylvania Supreme Court, in articulating its understanding of the United States Supreme Court decision, stated, "the Board of City Trusts, *being a state agency*, is incapable of administering

---

**2.** Employee Retirement Income Security Act, 29 U.S.C. §§ 1000—1461.

Girard College in strict compliance with the founder's prescribed racial restriction on admissions without being guilty of a violation of the Fourteenth Amendment." 391 Pa. at 441, 138 A.2d at 847 (emphasis added). These decisions resolve the question of private v. public actor for Fourteenth Amendment purposes, but do not answer whether the Board is either a local or State agency cloaked with immunity. Only a subset of State actors for Fourteenth Amendment purposes qualify for immunity as local or State agencies. *Compare Krynicky v. Univ. of Pittsburgh*, 742 F.2d 94 (3d Cir.1984) (concluding that University of Pittsburgh and Temple University are State actors subject to liability under 42 U.S.C. § 1983), *with Doughty v. Philadelphia*, 141 Pa.Cmwlth. 659, 596 A.2d 1187 (1991) (holding that Temple University is not a State agency cloaked with sovereign immunity).

Our analysis begins, as did common pleas,' with the statute defining the entities subject to sovereign immunity and we conclude, as did common pleas, that the Board is not a Commonwealth agency. However, we conclude that the Board is a local agency and, therefore, is subject to governmental immunity provided under 42 Pa.C.S. § 8541. We base our conclusion on: (1) the Board's performance of the City's duty to administer the trust *res* for the public benefit as directed by Girard's Will, (2) the express language of the statute making the directors of City trusts agents of the City, and (3) the policy underlying governmental immunity, which is to protect municipal assets from depletion through tort liability.

Sovereign immunity is established pursuant to 1 Pa.C.S. § 2310, which in relevant part, states:

> Pursuant to section 11 of Article I of the Constitution of Pennsylvania, it is hereby declared to be the intent of the General Assembly that *the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign and official immunity* and remain immune from suit except as the General Assembly shall specifically waive the immunity [emphasis added].

Immunity under this provision bars actions against Commonwealth parties, defined in pertinent part, as "[a] Commonwealth agency and any employee thereof." *See* 42 Pa.C.S. § 8501. A "Commonwealth agency" is "[a]ny executive agency or independent agency." 42 Pa.C.S. § 102.

> Agencies are classified as "executive" if they are under the supervision and control of the Governor, and, if they are not, as "independent." [42 Pa.C.S. § 102]. Both of these types of agencies are expressly defined as including entities such as boards, commissions, authorities, and other agencies "of the Commonwealth government." *Id.* "Commonwealth government" is, in turn, defined as encompassing the following:
>
> > ... the departments, boards, commissions, authorities and officers and agencies of the Commonwealth, but the term *does not include any political subdivision*, municipal or other local authority, or any officer *or agency of any such political subdivision* or local authority. 42 Pa.C.S. § 102.

*Marshall v. Port Auth. of Allegheny County*, 524 Pa. 1, 5, 568 A.2d 931, 933 (1990) (emphasis added). Common pleas properly concluded that, just as all authorities created by State statute are not automatically considered to be "the Commonwealth" for all purposes, not all boards created by State statute are independent Commonwealth agencies. *See Southeastern Pa. Transp. Auth. v. Union Switch & Signal, Inc.*, 161 Pa.Cmwlth. 400, 637 A.2d 662, 666 (1994). In the present case,

where the Act is explicit, the plain statutory language is a strong factor weighing against the conclusion that the Board is a Commonwealth agency. *See Marshall,* 524 Pa. at 5, 568 A.2d at 933–34. The General Assembly explicitly stated in Sections 1 and 6 of the Act that the Board shall function as an instrumentality and agent of the City of Philadelphia. *See* 53 P.S. §§ 16365 and 16370. Therefore, the Board is not an independent Commonwealth agency,[3] as defined in 42 Pa.C.S. § 102 and not a Commonwealth party subject to immunity under 1 Pa.C.S. § 2310.

Governmental immunity is conferred under 42 Pa.C.S. § 8541, which states, "[e]xcept as otherwise provided in this subchapter, no *local agency* shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person (emphasis added)." Drilling down through a series of statutory definitions, "local agency" is defined, in pertinent part, as "[a] government unit other than the Commonwealth government," 42 Pa.C.S. § 8501; a "government unit" includes "any government agency" and "government agency" includes "any political subdivision, municipal authority and other local authority or any officer or *agency of any such political subdivision* or local authority," 42 Pa.C.S. § 102 (emphasis added).

That the Act directs the Board to function as an instrumentality of the City and designates the Board's members as agents

of the City, might suggest that, as discussed above regarding Commonwealth agency, our analysis need not delve further. However, this statutory language, while an important factor, is not dispositive. *City of Philadelphia v. Philadelphia Parking Auth.,* 568 Pa. 430, 798 A.2d 161 (2002). The legislature created the Board in 1869 without any contemplation as to whether it is a "local agency" as defined in 42 Pa.C.S. § 102, which was enacted many years later. Therefore, we look to recent pronouncements to determine what constitutes a "local agency" within the definitions at 42 Pa.C.S. § 102.

Most recently, our Supreme Court, in *Sphere Drake Insurance Company v. Philadelphia Gas Works,* 566 Pa. 541, 782 A.2d 510 (2001), in determining that the Philadelphia Facilities Management Corporation (PFMC) is a "local agency," rejected the approach adopted by a panel of this court in *Modern Shoppers World v. Philadelphia Gas Works,* 164 Pa.Cmwlth. 257, 643 A.2d 136 (1994). This court said in *Modern Shoppers* that "an 'agency of local government' is one that has no independent legal existence, but is merely part of the organizational structure of that local government." 643 A.2d at 138. Applying this rule, the court in *Modern Shoppers* held that, "[n]o matter how much the functions of PFMC and the City are interwoven, who formed PFMC, who appoints its directors, and no matter how much control is exercised by the City . . . , PFMC is not

---

**3.** In addition, the Board does not appear on the list of independent agencies of the Commonwealth that is set forth in Section 102 of the Commonwealth Attorney's Act, Act of October 15, 1980, P.L. 950, 71 P.S. § 732–102. In *Northampton County Area Community College v. Dow Chemical, Inc.,* 389 Pa.Super. 11, 566 A.2d 591 (1989), our Superior Court, in concluding that a community college is not a Commonwealth agency, stated:

[W]e adopt an approach taken by other courts of this Commonwealth. For instance, in *Bradley v. Pennsylvania Turnpike Commission,* [121 Pa.Cmwlth. 51, 550 A.2d 261 (1988)], the [Commonwealth] court relied on the fact that the Turnpike commission was included in the *complete list* of independent agencies in 71 P.S. § 732–102 and on that basis held that the Commission was therefore a Commonwealth agency entitled to sovereign immunity." *Id.* at 597 (emphasis added).

an agency of the City—it is a private non-profit corporation." *Id.* In overruling *Modern Shoppers,* the Court in *Sphere Drake* said:

> The *Modern Shoppers World* court's substitution of a policy-based per se rule focusing on the fact and method of incorporation, to the exclusion of other factors, in determining whether an entity is a local agency, is not otherwise supported by the statutory scheme. The overall purpose of the Tort Claims Act, of course, is to limit government exposure to tort liability for its acts.... [T]o the extent that statutory construction beyond plain meaning need be resorted to at all here, it is the public control of an entity, its public function, and the effect on public administration and the public purse that is reflected in the definitional scheme and that should inform this Court's judgment.

566 Pa. at 548, 782 A.2d at 514–15. In determining whether the Board is a local agency, we apply the pragmatic approach directed by the Supreme Court in *Sphere Drake.* In this light, the Board's agency relationship to the City is best illustrated through a brief history of Girard's bequest, the role of the Commonwealth and the City in the creation and administration of Girard College, the City's ownership and control of the bequest and the creation of

the Board to take over the City's administrative duties.

By his Will, probated in 1831, Stephen Girard left, in trust, to the City certain real property and funds for the erection and operation of Girard College to benefit poor young men, for the construction of Delaware Avenue, and for the improvement of canal navigation. *See Vidal v. Philadelphia,* 43 U.S. 127, 185, 2 How. 127, 11 L.Ed. 205 (1844). In general, Girard's objectives were the education of poor orphans, the lightening of taxation, the prosperity of the City and the health and comfort of its inhabitants, objectives that conformed to and furthered the public health, safety and welfare objectives of the City government.[4] *See Philadelphia v. Fox,* 64 Pa. 169, 182 (1870). To ensure that the City administered his bequest for these public purposes, Girard directed publication of the trust's annual accounting in newspapers of general circulation and thereby always in the public eye and subject to electoral oversight. *See Vidal,* 43 U.S. at 135. Based on its use for a public benefit, the United States Supreme Court concluded that the City had the power to accept the bequest in trust for the benefit of its citizens and to administer the trust under the Acts of March 24 and April 4, 1832,[5] which directed the City to

---

**4.** When Girard made the bequest, the City of Philadelphia existed as a corporation known as the "Mayor, Aldermen, and Citizens of Philadelphia," formed by the Act of March 11, 1789, for the purpose of improving the "suppression of vice and immorality," "advancement of the public health and order," "promotion of trade, industry, and happiness," and "to provide against the evils occasioned thereby." *Vidal v. Philadelphia,* 43 U.S. 127, 187, 2 How. 127, 11 L.Ed. 205 (1844). By the Act of June 24, 1854, the State legislature enacted what is commonly known as the Consolidation Act, which amended the 1789 act and in effect joined the "old city" of about two square miles with the surrounding twen-

ty-eight municipalities to create the City of Philadelphia. *See Girard v. Philadelphia,* 7 Wall. 1, 74 U.S. 1, 19 L.Ed. 53 (1868). In *Girard v. Philadelphia,* the Supreme Court held that Philadelphia's legal title in the trust *res* was not affected by the change in the City's name or the enlargement of its area.

**5.** In *Vidal,* the Court quotes a portion of the Act of March 24, 1832, P.L. 176, as follows:

> That it shall be lawful for the mayor, aldermen, and citizens of Philadelphia, to exercise all such jurisdiction, enact all such ordinances, and to do and execute all such acts and things whatsoever, as may be necessary and convenient for the full and entire accep-

perform the acts necessary to the trust's execution. *See Vidal*, 43 U.S. at 190. In this manner, legal title to the trust assets became vested in the City of Philadelphia, which enacted ordinances necessary to construct the school and appointed agents to run it.[6]

In 1869, the General Assembly determined that Girard College and the many other charitable trusts vested in the City as the result of various bequests and donations should be administered more efficiently and, to achieve that end, passed the statute creating the Board of Directors of City Trusts. Six months after its enactment, the Pennsylvania Supreme Court, in *Philadelphia v. Fox*, upheld the constitutionality of the Act that created the Board and therein stated:

It provides merely that one class of the *functions of the municipality* shall be administered in a manner different from that which had been used heretofore.... It provides a separate body of citizens for the administration of the trusts vested in the city.... [I]t imposes upon it all the duties devolved on the [city] itself as trustee.... No one I think can doubt that it was entirely competent for that authority to vest the entire management and control of all municipal affairs in just such a body as that constituted by this act. If they

could do the greater, they can do the less. They could make a similar provision for any other department of the municipality. They might establish a board of police, of highways, of sewerage, of cleansing. They have often done so. The departments of the prison, of health, of the poor and of the public schools have been placed in the hands of bodies of men constituted and appointed just as is "The Board of Directors of City Trusts,".....

64 Pa. at 183 (emphasis added). In equating the Board with municipal agencies such as departments of police, health, highways and schools, the court left no doubt that the Board is an arm of municipal government.

Our Superior Court treated the Board as a municipal department in *Fairbanks v. Kirk*, 12 Pa.Super. 210 (1899), where it held that a writ of attachment could not be executed against the Board, as an agency of the City. The court, in *Fairbanks*, said:

The authorities in our state all hold that the writ of attachment execution cannot be issued against a municipal corporation.

....

In cases of Phil. v. Fox, 64 Pa. 169, and Girard's Appeal, 4 Penny. 347, the status of the directors of city trusts is clearly defined, and in this latter case it was

---

tance, execution, and prosecution of any and all the devises, bequests, trusts, and provisions contained in [Girard's] will....

43 U.S. at 190. In *In re Girard's Estate*, 386 Pa. 548, 127 A.2d 287 (1956), a portion of the Act of April 4, 1832, P.L. 275 is set forth as follows:

[T]he select and common council of the City of Philadelphia, shall be and they are hereby authorized to provide by ordinance or otherwise, for the election or appointment of such officers and agents as they may deem essential to the due execution of the duties and trusts enjoined and created by the Will of the late Stephen Girard.

386 Pa. at 621, 127 A.2d at 321 (Musmanno.J., dissenting).

6. Justice Musmanno said, "That the Girard College was an object of continuous solicitude, care, and managership on the part of the City fathers is evidenced by the fact that between September 15, 1832 and December 18, 1869, the Council enacted 48 different ordinances devoted exclusively to the Girard College." *In re Girard's Estate*, 386 Pa. 548, 622, 127 A.2d 287, 322 (1956) (Musmanno, J. dissenting), *rev'd*, 353 U.S. 230, 77 S.Ct. 806, 1 L.Ed.2d 792 (1957).

said: "The directors of city trusts are a department of the municipality which the legislature had a constitutional right to establish." The act of 1869 provides: "The said directors in the discharge of their duties and within the scope of their powers shall be considered agents or officers of said city."

12 Pa.Super. at 211.

In *Wilson v. Board of Directors of City Trusts*, our Supreme Court, in determining that jurisdiction to decide the mayor's petition to view Board records and accounts lay, in the first instance, in the orphans' court, described the relation between the Board and the City government as follows:

As stated by Judge Sharswood, in *Philadelphia v. Fox*, 64 Pa. 169, where the act of 1869 first came up for consideration, it merely provided that one function of municipal government that had theretofore been exercised by the city generally, was removed and placed in a body of fifteen men, while the mayor, council, and other officers continued to exercise all other government functions. Both groups are constituents of city government. . . .

324 Pa. at 554, 188 A. at 593.

As the history recited above demonstrates, Girard turned his private wealth over to the City for public use. As the courts stated in the early decisions, challenging Girard's Will, the City's ability to accept the bequest depended on its use for a public purpose. *Vidal*, 43 U.S. at 190. In its stated purpose and in the directives concerning its administration, Girard's bequest changed his private property into public property belonging to the City. Insofar as the City holds the property for the public benefit, it acts in its governmental capacity. Until the creation of the Board in 1869, the City performed a public function when it directly managed the property pursuant to state enabling statutes.

When the General Assembly created the Board, it transferred the performance of this public function from the City's direct control and explicitly stated that the "directors, in the discharge of their duties, and within the scope of their powers aforesaid, shall be considered agents or officers of said city." Section 6 of the Act, 53 P.S. § 16370. This is very different legislation from that underlying the holdings in *Mooney v. Temple University*, 448 Pa. 424, 292 A.2d 395 (1972) and *Doughty v. Philadelphia*, 141 Pa.Cmwlth. 659, 596 A.2d 1187 (1991), which common pleas erroneously found to be analogous to the present case.

In *Mooney* and *Doughty*, the courts concluded that the Temple University—Commonwealth Act (Temple Act), Act of November 30, 1965, P.L. 843, 24 P.S. §§ 2510–1—2510.12, did not transform Temple, which was originally chartered as a non-profit corporation for educational purposes, into a Commonwealth agency. By the enactment of the Temple Act, the legislature provided Temple with increased financial assistance from the Commonwealth. *See* Section 8 of the Temple Act, 24 P.S. § 2510–8. In conjunction therewith, the Temple Act provides for regulatory mechanisms to insure that the public funds are properly expended. *Mooney*, 448 Pa. at 432, 292 A.2d at 400. However, while inserting a measure of Commonwealth involvement, the Temple Act explicitly preserves Temple's original status as a non-profit corporation. Section 3, 24 P.S. § 2510–3. This is the principal distinction from the present case. Temple remains a non-profit corporation neither administered nor operated by the State while it receives financial assistance from the State. In contrast, Girard's private wealth was transformed, by his bequest and its

acceptance, into City property.[7] Pursuant to enabling legislation, the City administered the trust and operated Girard College as a part of its municipal duties. Consequently, the Board created specifically to perform those duties for the City and explicitly deemed by the State legislature to be an agent of the City is a local agency under the cloak of the City's tort immunity.

Inasmuch as the Board, in administering Girard College on behalf of the City, and Richard W. Burcik, acting as general manager of the Board,[8] are immune from tort liability under 42 Pa.C.S. § 8541, common pleas erred in overruling the preliminary objection to Count 4. Accordingly, we reverse that portion of common pleas' order.

## ORDER

AND NOW, this 17th day of July, 2002, the order of the Court of Common Pleas of Philadelphia County overruling the preliminary objection to Count 4 in the above captioned matter is hereby REVERSED.

7. The Girard bequest to the City is analogous to the bequest of James Smithson to the federal government, which created the Smithsonian Institution. Similarly, private wealth was transformed into public property. The Smithsonian Institution is considered a federal agency, immune from tort liability. *See Expeditions Unlimited Aquatic Enter., Inc. v. Smithsonian Inst.*, 566 F.2d 289, 296 (D.C.Cir.1977) (concluding that the Institution is a federal agency based on the nature of its function as a national museum and center of scholarship, coupled with the substantial government role in funding and oversight).

8. The Caplens, in their complaint, do not aver any facts in support of their conclusory statement, in paragraph 6, that Burcik "acted in his own behalf." For this reason, the Caplens have not sufficiently averred a cause of action against Burcik outside of his capacity as general manager of the Board.