**CITY OF PHILADELPHIA, Trustee Under the Will of Stephen Girard, Deceased, Acting by the Board of Directors of City Trusts**

v.

**CUMBERLAND COUNTY BOARD OF ASSESSMENT APPEALS, Appellant.**

Commonwealth Court of Pennsylvania.

Argued March 8, 2011.

Decided April 4, 2011.

Reargument Denied May 23, 2011.

Stephen D. Tiley, Carlisle, for appellant.

Gary D. Fry, Philadelphia, for appellee.

BEFORE: PELLEGRINI, Judge, and BROBSON, Judge, and KELLEY, Senior Judge.

OPINION BY Judge PELLEGRINI.

The Cumberland County Board of Assessment Appeals (County) appeals from the order of the Court of Common Pleas of Cumberland County (trial court) granting summary judgment to the City of Philadelphia (City), Trustee under the will of Stephen Girard, Deceased (Girard), Acting by the Board of Directors of City Trusts (Board), finding that certain investment property owned by the trust created by Stephen Girard (Trust) was immune and exempt from taxation by the County and its subdivisions. For the reasons that follow, we reverse.

The facts of the instant dispute are simple and undisputed, but must be considered in light of the long and complicated history of the Trust and the Board. The City, as trustee of the Girard Trust, owns property (Property) in the County that it leases to the Commonwealth of Pennsylvania, Office of the Attorney General, as office space. The Attorney General pays a monthly rent of $42,677.57. The income from the Property is used exclusively for the operations of Girard College (School),[1] a creation of the Girard Trust located in

---

1. The term "college" is a misnomer. The School actually provides education to children in grades one through 12.

the City. The taxing authorities of the County, the Borough of Lemoyne and the West Shore School District assessed property taxes against the Property. The Board filed an application for tax exemption with the County in 2002, requesting an exemption from the real estate taxes because the Board is an instrumentality of the Commonwealth that is immune from local taxation and, alternatively, because the Board's real property is exempt from taxation as it is leased for a public purpose to the Commonwealth. The County denied the Board's exemption request, but on appeal, the trial court found that the Board was immune from taxation and that the Property was exempt, causing over $300,000 in taxes to be refunded by the taxing bodies. This appeal by the County followed.[2]

## I.

Before turning to the arguments of the parties, it is necessary to provide the history of the relationship between the Trust and the Board and the lengthy history of litigation concerning the nature of the Board in order to place this case in its proper context.[3]

In 1831, Stephen Girard, a shipping and banking magnate and one of the richest men in America, died. He left a will that was enormously generous to many public causes, not least of which was the School. Among other things, he left his entire residuary estate to "[t]he Mayor, Aldermen and Citizens of Philadelphia" in trust to erect the School, a boarding school which was to educate "poor male white orphan children" between the ages of six and 10. The will contained detailed provisions concerning where and how the School would be built and how it would embark on its task of educating these children. Relevant terms of the will can be found at *In re Estate of Stephen Girard (Girard I)*, 386 Pa. 548, 127 A.2d 287 (1956), reversed by *Commonwealth of Pennsylvania v. Board of Directors of City Trusts of the City of Philadelphia*, 353 U.S. 230, 77 S.Ct. 806, 1 L.Ed.2d 792 (1957).

Three months after Girard's death, the Pennsylvania General Assembly enacted legislation directing the City to carry the will into effect.[4] Two weeks later, the General Assembly authorized the City to provide "for the election or appointment of such officers and agents as they deem essential to the due execution of the duties and trusts enjoined and created by the will of Stephen Girard."[5] In 1844, the United States Supreme Court decided *Vidal v. Philadelphia*, 43 U.S. 127, 2 How. 127, 11 L.Ed. 205 (1844), holding that the City had the power to accept Girard's bequest in trust and administer the Girard Trust under the 1832 statutes vesting legal title to the Trust assets in the City. Three years later, the General Assembly enacted legislation making the City the guardian of the person and property of every child admit-

---

2. The standard of review of the trial court's order granting summary judgment is limited to deciding whether the court committed an error of law or abused its discretion. *Barra v. Rose Tree Media School District*, 858 A.2d 206 (Pa.Cmwlth.2004). Summary judgment must be granted in only those cases in which the record clearly shows that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *In Re Estate of Ross*, 815 A.2d 30 (Pa. Cmwlth.2002).

3. Unless otherwise noted, this history can be found in *In re Girard College Trusteeship (Girard II)*, 391 Pa. 434, 138 A.2d 844 (1958) (Musmanno, J. (dissenting)), as well as in *Burcik v. Caplen*, 805 A.2d 21 (Pa.Cmwlth. 2002) (vacated on other grounds by *Caplen v. Burcik*, 577 Pa. 521, 847 A.2d 56 (2004)).

4. Act of March 24, 1832, P.L. 176.

5. Act of April 4, 1832, P.L. 275.

ted to the School and to bind out graduates to suitable occupations following their graduation.[6] Additionally, from 1833 to 1869, the Philadelphia City Council (City Council) passed 48 ordinances dealing exclusively with the School in all areas of planning and operation. Following several delays, the School finally opened in 1848 under the direct management, supervision and authority of the City Council.

In 1869, the General Assembly created the Board, which was composed of the Mayor of Philadelphia, the Presidents of the Select and Common Councils and 12 other citizens to be appointed by the Court of Common Pleas of Philadelphia County. The Board took over the direct and immediate management of the Trust, including the School, as well as numerous other charitable trusts vested in the City. This statute is still in operation today.[7] The following year, our Supreme Court in *Philadelphia v. Fox*, 64 Pa. 169 (1870), upheld the constitutionality of the Act, described the actions of the Board as "one class of the functions of the municipality" and equated the Board to municipal agencies such as police departments or schools. 64 Pa. at 183. Then, in 1899, the Superior Court in *Fairbanks v. Kirk*, 12 Pa.Super. 210 (1899), held that a writ of attachment could not be executed against the Board because it was a municipal corporation. Litigation continued throughout the twentieth century attempting to determine the nature of the Board and its relationship with the City, State, Girard Trust and School. In 1936, our Supreme Court in *Wilson v.*

6. Act of February 27, 1847, P.L. 178, 53 P.S. § 16339, *repealed by* Act of November 19, 1959, P.L. 1526.

7. Act of June 30, 1869, P.L. 1276, 53 P.S. §§ 16365–16370(Act). Section 1 of the Act, 53 P.S. § 16365, entitled "Duties, rights and powers of city vested in board; composition of board," provides:

All and singular the duties, rights and powers of the city of Philadelphia, concerning all property and estate whatsoever, dedicated to charitable uses or trusts, the charge or administration of which is now or shall hereafter become vested in or confined to the city of Philadelphia, shall be discharged by the said city through the instrumentality of a board composed of fifteen persons, including the mayor of said city, the presidents of the select and common councils for the time being, and twelve other citizens, appointed as hereinafter provided, to be called directors of city trusts, who shall exercise and discharge all the duties and powers of said city, however acquired, concerning any such property appropriated to charitable uses, as well as the control and management of the persons of any orphans or others, the objects of such charity, to the extent that the same have been or hereafter may be, by statute law or otherwise, vested in or delegated to the said city or the officers thereof.

Section 2 of the Act, 53 P.S. § 16366, provides that the 12 other citizens referenced in Section 1 are to be appointed by a board of appointment formed by the Court of Common Pleas of Philadelphia County and that board members can be removed by a two-thirds vote of the members of the board of appointment. Section 3 of the Act, 53 P.S. § 16367, provides that the Board shall meet every month and that the treasurer of the City is also the treasurer of the Board. Section 4 of the Act, 53 P.S. § 16368, sets forth the powers of the Board in carrying out its duties and requires it to make an annual report of its activities to the City, the board of appointment, and to the General Assembly. Section 5 of the Act, 53 P.S. § 16369, is not relevant to the instant matter. Section 6 of the Act, 53 P.S. § 16370, provides:

The said directors [that is, the Board], in the discharge of their duties, and within the scope of their powers aforesaid, shall be considered agents or officers of said city; but no compensation or emolument whatever shall be received for such services, nor shall any of them have or acquire any personal interest in any lease or contract whatever made by said city, through said directors, or through any agent or employe whatever, appointed by them.

*Board of Directors of City Trusts,* 324 Pa. 545, 188 A. 588 (1936), held that the Act transferred one function of City government to the Board, which was a constituent of City government.

Then, in 1956, our Supreme Court in *Girard I* held that black children could not be admitted to the School because in his will, Girard specifically limited admission to white children. The United States Supreme Court, in *Commonwealth v. Board,* reversed holding, "The Board which operates Girard College is an agency of the State of Pennsylvania." *Id.* at 231, 77 S.Ct. 806. The Supreme Court offered no reasoning for its conclusion that the Board was a state agency, but the context was a 14th Amendment discrimination action. The Supreme Court then remanded to the Pennsylvania Supreme Court, which remanded to the Philadelphia County Orphans Court. The Orphans Court, rather than ordering the School to admit black children, stripped the Board of its trusteeship over the School and replaced it with private citizens. On further appeal to our Supreme Court, *Girard II,* 391 Pa. 434, 138 A.2d 844 (1958) (*cert. denied, Commonwealth of Pennsylvania v. Board of Directors of City Trusts of the City of Philadelphia,* 357 U.S. 570, 78 S.Ct. 1383, 2 L.Ed.2d 1546 (1958)), affirmed the Orphans Court. It held:

> We are unable to perceive the slightest basis for the contention [that the School is a public charity] either in Girard's will or in legislation passed in relation to the Girard Estate.
>
> The testator's primary and dominant object was to found a private charitable institution . . .
>
> It is not possible to read Girard's will without being deeply impressed with the fact that it was *the college, as a private charity,* and *not the trusteeship of the City,* [emphasis in original] that was the

primary object of the donor's testamentary scheme. Of course, a trustee was a necessary and unavoidable incident of the trust, and the testator, desiring the continuity of the institution, availed himself of the services of the only existing local corporate body capable of administering the trust in perpetuity.

\*　　\*　　\*

> Little less than startling is the suggestion that the State or City could, by legislation enacted by either of them after Girard's death, alter or affect the terms of his will respecting the creation and administration of Girard College which did not call for or require legislation to make it an operating charitable institution. There is nothing in the testator's will or in any legislation by the Commonwealth or the City that serves to make Girard College a public charity or that requires that it be publicly administered. On the contrary, we hold, on the basis of the compelling testamentary evidence, already noted, that Girard College is a private charity capable of being lawfully administered by private trustees.

391 Pa. at 444–47, 138 A.2d at 848–49. In *Commonwealth of Pennsylvania v. Brown,* 392 F.2d 120 (3d Cir.1968), though, the Third Circuit held that since the Board was appointed by public officials, the Board was subject to the 14th Amendment and was required to desegregate. It did not discuss the above-quoted language from *Girard II.*

In 1986, this Court held in *City of Philadelphia v. Local 473 International Brotherhood of Firemen and Oilers, AFL–CIO,* 96 Pa.Cmwlth. 629, 508 A.2d 628 (1986), that School employees were not municipal employees stating, "It hardly follows that the Supreme Court's finding state action for Fourteenth Amendment purposes is controlling in determining who is the employer of employees of Girard College."

*Id.* at 631, 508 A.2d 628. This was followed in 1995 by a Third Circuit decision, *In re School Asbestos Litigation,* 56 F.3d 515 (3d Cir.1995), agreeing that the Board is not a City agency because although it performs functions for the City, it is neither part of the City nor responsible to the City and is exempt from the Philadelphia Home Rule Charter. Instead, the Court held that the Board is a Commonwealth agency because the Board was appointed pursuant to the same statute. It further held that the Board and School are one and the same legal entity because only the Board may sue and be sued on the School's behalf.[8]

This Court, in *Moore v. Board of Directors of City Trusts,* 809 A.2d 420 (Pa. Cmwlth.2002), adopted the reasoning of *School Asbestos,* holding that the School and Board are one and the same, and they both enjoy sovereign immunity. However, the next year, in *Burcik v. Caplen,* 805 A.2d 21 (Pa.Cmwlth.2002) (vacated on other grounds by *Caplen v. Burcik,* 577 Pa. 521, 847 A.2d 56 (2004)), we held that the Board is not a Commonwealth agency but instead held that it is subject to governmental immunity because it is a local agency. Our Supreme Court vacated and remanded for further proceedings in light of *Sphere Drake v. Philadelphia Gas Works,* 566 Pa. 541, 782 A.2d 510 (2001), a case dealing with the conditions under which local agencies are entitled to immunity. It made no mention of the *Burcik* holding that the Board is not a Commonwealth agency.

## II.

Keeping in mind the shifting nature of what the Girard Trust, School and Board are depending on the context, we turn to the arguments of the parties. On appeal, the County contends that the Board or the Trust is either a local agency or a private charity, not a Commonwealth agency. If it is a public entity, it is a local agency because the Trustee under the will is the City and not the Commonwealth, which merely set up the mechanism by which members of the Board are selected. It can be considered a private charity because both the Board and City are merely in a trustee relationship with it and are not the beneficial owner of the Property. No matter whether it is a local agency or a private charity, because it is not a Commonwealth agency immune from taxation, it is subject to real estate taxation because it is merely an investment property of the private charity that is not exempt from taxation.[9]

In response, the Board contends that it is a Commonwealth agency because the manner of selection of the Board to administer the Trust for the City was established by the General Assembly, making all of its Property immune from local taxation. In addition, the Property is exempt from taxation as it is public property used for a public purpose, namely, office space for the Attorney General.

## III.

■ A trust "is a fiduciary relationship with respect to property, arising from a manifestation of intention to create that relationship and subjecting the person who holds title to the property to duties to deal with it for the benefit of charity ..." Re-

8. Absent a pronouncement by the United States Supreme Court, decisions of the inferior federal courts are not binding on state courts. *Rader v. Pennsylvania Turnpike Commission,* 407 Pa. 609, 182 A.2d 199 (1962).

9. The County Commissioners Association of Pennsylvania, as amicus curiae, makes similar arguments.

statement (Third) of Trusts § 2 (2003). A trust involves three elements: a trustee, who holds the trust property and is subject to duties to deal with it for the benefit of another; one or more beneficiaries, to whom and for whose benefit the trustee owns the duties; and the trust property. Restatement (Third) of Trusts § 2, Comment f. The beneficiary has equitable title to the trust property, and the trustee normally has only the legal title to the trust property. Holding title is not the same as ownership because "ownership" indicates that one holds an interest for one's own benefit while "title" does not distinguish between holding an interest for oneself or for another. Restatement (Third) of Trusts § 2, Comment d. Under the Restatement then, the trustee's duty is to carry out the testator's intent; how the trustee is selected is irrelevant to its fiduciary duty to the trust. Because the Board carries out the intent of the Trust and the Trust/School are legally one and the same, the nature of the Trust will determine how we characterize the Trust. *Moore.*

Examining the nature of the Trust, it is not a Commonwealth agency merely because the manner of selection of the Board members was provided for by the General Assembly.[10] The Board members have a fiduciary duty to the Trust and have no duty or relationship with the Commonwealth whatsoever. Other than the Board's annual report to the General Assembly, Section 4 of the Act, 53 P.S. § 16368, the Commonwealth has had nothing whatsoever to do with the Board since creating it in 1869. It was Girard's will that created the Trust and provided for how it would be carried out, not the General Assembly, which could then only provide for the selection of the members of the Board of Trustees, not provide for any oversight over the Trust or the Board by Commonwealth officials or agencies. Merely providing the method of selection of the members of the Board does not make the Trust or its Board a Commonwealth agency.

Neither is the Board or, more accurately, the Trust a local agency of the City of Philadelphia. "Local Authority" is defined as "a municipal authority or any other body corporate and politic created by one or more political subdivisions pursuant to statute." 1 Pa.C.S. § 1991. While this definition only applies to statutes enacted since 1975, it is informative in that it conforms with the concept that local agencies are creations of local governments and ultimately subject to their oversight, laws, officials and, ultimately, to the electorate. The Board does not oversee an entity created by the City of Philadelphia but rather a trust created by Stephan Girard; and it is not answerable to public officials or ultimately to the electorate, but rather has a fiduciary duty to carry out Girard's wishes, to the extent allowed by law, and not the public's. Furthermore, although the Board is tasked with administering charitable trusts in which the City is named as trustee, Section 1 of the Act, 53 P.S. § 16365, it operates independently of the City except for its annual report to the City, Section 4 of the Act. Additionally, while Section 6 of the Act, 53 P.S. § 16370, makes the members of the Board agents of the City, in administering the Trust, they receive no compensation from the City.

---

10. *See Burcik.* While our Supreme Court vacated *Burcik,* it did so for other reasons. As we stated in *Local 473,* just because the United States Supreme Court found that it was a state actor for purposes of the Fourteenth Amendment does not make it a state agency. Private actors can also be deemed state actors for Fourteenth Amendment purposes. *See Adickes v. S.H. Kress & Company,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

If it is not a Commonwealth or a local agency, then necessarily, it must be a private trust, which is what our Supreme Court found that it was in *Girard II*, the last pronouncement of our Supreme Court on the nature of the Trust. It held that the School, created as part of the Trust, was a gift by Stephen Girard, a private citizen, to certain children in Philadelphia. This gift, in and of itself, has no public character, and Girard could have designated any trustee to oversee it. The fact that Girard initially designated the City of Philadelphia as trustee has no bearing on the nature of the Trust (and, therefore, the School) other than ensuring the continued future existence of the trustee. Because the Trust was set up as a charity by a private individual's will, the Supreme Court held that the Trust is a private charity and not a public charity.

## IV.

■ Having determined that the Trust and Board are not government agencies, we next turn to the question of whether the Trust is exempt from paying local taxes as a purely public charity. The Board declined to address in its brief whether it (that is, as it relates to the Trust and School) is a charity, simply calling any argument that it is not a government agency without merit. However, given that neither the Trust nor the Board is a government agency, the only way the Property could be tax-exempt is if the Trust is a charity.

Section 5(a) of the Institutions of Purely Public Charity Act (Charity Act) [11] provides:

An institution of purely public charity is an institution which meets the criteria set forth in subsections (b), (c), (d), (e) and (f). An institution which meets the criteria specified in this section shall be considered to be founded, endowed and maintained by public or private charity.

Section (b) requires that the institution advance a charitable purpose, one of which is providing education. Section (c) requires that the institution operate entirely free from a private profit motive. Section (d) mandates that the institution must donate or render gratuitously a substantial portion of its services. Section (e) requires that the institution must benefit a substantial and indefinite class of persons who are legitimate subjects of charity, and Section (f) provides that the institution must relieve the government of some of its burden, among which is education. Without delving too deeply into the Trust's affairs, it appears that it qualifies as an institution of purely public charity.

■ The next question is whether the Property is tax-exempt because it is owned by a purely public charity. Article 8, Section 2(a)(v) of the Pennsylvania Constitution provides:

The General Assembly may by law exempt from taxation: (v) Institutions of purely public charity, but in the case of any real property tax exemptions only that portion of real property of such institution which is actually and regularly used for the purposes of the institution.

Substantially, the same language appears in Section 5(h)(1) of the Charity Act.[12] Furthermore, Section 202 of the Fourth to Eighth Class County Assess-

---

11. Act of November 26, 1997, P.L. 508, 10 P.S. § 376(a).

12. Section 5(h)(1) of the Charity Act provides: Nothing in this act shall affect, impair or hinder the responsibilities or prerogatives of the political subdivision responsible for maintaining real property assessment rolls to make a determination whether a parcel of property or a portion of a parcel of property is being used to advance the chari-

ment Law (Assessment Law)[13] delineates which property is exempt from all local taxation. After providing a list of such properties, it provides, in relevant part:

> (b) [A]ll property, real or personal, other than that which is actually and regularly used and occupied for the purposes specified in this section, and all such property from which any income or revenue is derived, other than from recipients of the bounty of the institution or charity, shall be subject to taxation ...

■ For property that is owned by a charity but leased to another entity to be tax exempt, the charity must prove (1) that the charity-lessor does not derive any income or revenue from the property; (2) that any rent paid was merely nominal; and (3) that the lessee was itself the recipient of the lessor's charity. *In re Appeal of Archdiocese of Philadelphia*, 151 Pa. Cmwlth. 480, 617 A.2d 821, 823 (1992).[14]

The Trust does not meet any of these criteria. First, it derives rental income from the Property in the amount of $42,677.57 per month. Second, in no way can this amount be considered nominal. Third, the Office of Attorney General is not the recipient of the Trust's charity.

Finally, the Trust does not meet the additional criteria of Section 202 that it occupy the Property. For any or all of these reasons, the Property is not tax-exempt.[15]

For the foregoing reasons, the order of the trial court granting summary judgment to the Board is reversed.

### ORDER

AND NOW, this 4th day of April, 2011, the order of Court of Common Pleas of Cumberland County, dated July 28, 2010, is reversed.

---

table purpose of an institution of purely public charity or to assess the parcel or part of the parcel of property as taxable based on the use of the parcel or part of the parcel for purposes other than the charitable purpose of that institution.

13. Act of May 21, 1943, P.L. 571, *as amended*, 72 P.S. § 5453.202.

14. This case deals with Section 204 of the General County Assessment Law, Act of May 22, 1933, P.L. 853, *as amended*, 72 P.S. § 5020-204. This section is substantially the same as Section 202 of the Assessment Law, and it is immaterial which is applied to the instant matter.

15. Even if the Trust was determined to be a local agency, the Property would still not be

exempt from taxation. Section 202(a)(7) of the Assessment Law, 72 P.S. § 5453.202(a)(7), exempts from taxation all "public property used for public purposes with the ground thereto annexed and necessary for the occupancy and enjoyment of the same." *See also City of Pittsburgh v. Board of Property Assessment Appeals and Review of the County of Allegheny*, 49 Pa.Cmwlth. 442, 412 A.2d 655 (1980). Here, even if the Property were public property, it is not used for a public purpose. Rather, it is used as an investment property that generates rental income. While it is true that the lessee is the Attorney General, the identity of the tenant does not transform the purpose into a public purpose. The identity of the lessee is incidental to the use of the Property, which would serve the Board in exactly the same way if the tenant were a private entity.